Filed 10/12/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GOTEK ENERGY, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SOCAL IP LAW GROUP, LLP,<br><br>    Defendant and Respondent. | 2d Civil No. B266681<br>(Super. Ct. No. 56-2013-00444783-CU-PN-VTA)<br>(Ventura County) |

In this legal malpractice action, GoTek Energy, Inc., (client) appeals from the judgment entered in favor of SoCal IP Law Group, LLP, (firm one). The trial court granted firm one's motion for summary judgment. Client also appeals from a postjudgment order awarding firm one attorney fees of $140,000.

Firm one was client's patent counsel. Firm one failed to timely file patent applications. Client retained Parker Mills (firm two) to bring a malpractice action against firm one. The trial court ruled that firm two had not filed the action within the one-year statute of limitations. Client contends that the statute of limitations was tolled under the continuous representation exception of Code of Civil Procedure section 340.6, subdivision (a)(2).[1] Even if the statute of limitations was not tolled, client contends that firm one is not entitled to recover attorney fees. We affirm.

---

[1]Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

*Factual and Procedural Background*

As client's patent counsel, firm one's duties included obtaining "'patent rights in all applicable foreign countries.'" In June or July 2012, firm one informed client that it failed to timely file applications for patent rights in Japan and Brazil. In August 2012, firm one "admitted . . . that it was negligent." On September 26, 2012, client retained firm two "for the purpose[] of investigating whether [firm one's] negligence in failing to timely file the patents in Japan and Brazil amounted to legal malpractice."

On November 5, 2012, firm one received a fax from firm two stating that client was making a malpractice claim against it. Firm two requested that firm one "tender this claim to your insurance carrier."

On November 7, 2012, firm one sent an email to client stating that, in view of the malpractice claim, it "must withdraw" as counsel. "Consequently, the firm's attorney-client relationship with [client] is terminated forthwith, and we no longer represent [it] with regard to any matters." Firm one continued, "Please tell us immediately where we should send [client's] files, and we will arrange for their delivery. You should retain patent counsel to handle your patent matters."

In a November 8, 2012 letter to firm one, client requested that firm one "immediately make all necessary preparations and take all necessary actions to deliver all [of client's] files to" Lucas Wenthe at Armstrong Teasdale, LLP. Client had previously "engaged the services of Armstrong Teasdale to render legal work, primarily in the realm of trademarking." In the letter client noted: "It would be helpful to transfer all electronic files by Nov. 16, 2012 and remaining original hard copies (where electronic copies aren't available) by Nov. 23, 2012." The concluding sentence states, "[Client] sincerely appreciates the services provided by [firm one]." On November 8, 2012, client emailed to firm one "a signed copy of the request for Transfer of Files from [firm one] to Lucas Wenthe at Armstrong Teasdale, LLP."

On November 15, 2012, firm one emailed a letter to client stating: "Pursuant to your request, this will confirm that we have terminated the attorney client

2

relationship with you. . . . [W]e are no longer representing you with regard to your patent matters. As requested, we are transferring your files to Lucas Wenthe of Armstrong Teasdale, LLP." On the same date, firm one sent to Armstrong Teasdale via FedEx a "CD with all pertinent GoTek Energy files." In its opening brief, client alleges that "the record clearly establishes [that] on November 15, 2012," firm one "transferred to [client] its files."

Steven Herbruck, client's chief executive officer, testified that he believed "the relationship" with firm one had ended on November 15, 2012, "[b]ecause the files had been transferred. As far as we were concerned, then they no longer represented us on any matters."

The following year, on November 14, 2013, client filed the malpractice action against firm one. In its motion for summary judgment, firm one argued that the one-year statute of limitations began to run no later than November 8, 2012, "when [client] consented to the termination of the attorney-client relationship and demanded that its files be sent to its replacement patent counsel." Thus, the complaint filed on November 14, 2013, was "too late."

In its ruling granting the motion for summary judgment, the trial court reasoned: "Arguably, the attorney-client relationship ended on November 7, [2012,] but it clearly terminated the following day when [client] responded to the letter telling [firm one] where to send its files. Following that correspondence, a reasonable client would no longer entertain the belief that [firm one] would provide further legal services. The administrative functions [the transfer of client's files to replacement counsel] that took place after November 8, 2012, were not legal services and therefore do not change this result."

*Summary Judgment/Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[F]rom commencement to

3

conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.*, at p. 850, fn. omitted.)

"To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on [firm one's] motion. [Citations.] In so doing, we view the evidence in the light most favorable to [client] as the losing part[y], resolving evidentiary doubts and ambiguities in [its] favor. [Citation.]" (*Martinez v. Combs* (2010) 49 Cal.4th 35, 68.) "We must presume the judgment is correct . . . ." (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.) Thus, "[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . '[I]t is the appellant's responsibility . . . to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.'" (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

*Tolling of Statute of Limitations: Continuous Representation*

"The applicable statute of limitations for legal malpractice claims is section 340.6." (*Truong v. Glasser* (2009) 181 Cal.App 4th 102, 110.) It provides that a malpractice action must be commenced "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ." (§ 340.6, subd. (a).) The running of the statute of limitations is tolled during the time that "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (*Id.*, subd. (a)(2); see also *Beal Bank*, *SSB v. Arter & Hadden*, *LLP* (2007) 42 Cal.4th 503, 505 ["Under California law, the statute of limitations for attorney malpractice claims arising from a given matter is tolled for the duration of the attorney's representation of the client in that matter"].) The tolling is referred to as "the continuous representation exception." (*Id.*, at p. 511; *Truong v. Glasser*, *supra*, 181 Cal.App.4th at p. 115.) "Code of Civil Procedure section 340.6 does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject

4

matter continues or when the representation ends, and the legislative history does not explicitly address this question." (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 28.)

*The Tolling of the Statute of Limitations*

*Ended No Later than November 8, 2012*

Client contends that there is a triable issue of fact whether the one-year statute of limitations was tolled under the continuous representation exception. We disagree. As a matter of law, the tolling of the statute of limitations ended no later than November 8, 2012, more than one year before the filing of the malpractice action.

"An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney. [Citations.]" (*Gonzalez v. Kalu*, *supra*, 140 Cal.App.4th at p. 28.) Pursuant to this rule, firm one's representation of client ended on November 8, 2012, when client wrote a letter to firm one requesting that it "immediately make all necessary preparations and take all necessary action to deliver all [of client's] files to" Armstrong Teasdale, LLP. On the same date, client emailed to firm one "a signed copy of the request for Transfer of Files from [firm one] to . . . Armstrong Teasdale, LLP." By requesting that its files be immediately delivered to replacement counsel, client consented to firm one's express withdrawal the previous day. Client did not object to the withdrawal or indicate that it wanted firm one to continue to represent it. Instead, it wrote, "[Client] sincerely appreciates the services provided by [firm one]."

Even if firm one had withdrawn without client's consent, the withdrawal would still have been effective. "[F]or purposes of Code of Civil Procedure section 340.6, subdivision (a)(2), in the event of an attorney's unilateral withdrawal or abandonment of the client, the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services. [Citations.] That may occur upon the attorney's express notification to the client that the attorney will perform no further services . . . . Absent actual notice to the client that the attorney will perform no further legal services or circumstances that

5

reasonably should cause the client to so conclude, a client should be entitled to rely on an attorney to perform the agreed services and should not be required to interrupt the attorney-client relationship by filing a malpractice complaint. After a client has no reasonable expectation that the attorney will provide further legal services, however, the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end." (*Gonzalez v. Kalu*, *supra*, 140 Cal.App.4th at pp. 30-31, fns. omitted.)

Pursuant to this rule, firm one's representation ended on November 7, 2012. On that date firm one emailed client that it "must withdraw" as client's attorney, that its "attorney-client relationship with [client] is terminated forthwith," and that it "no longer represent[s] [client] with regard to any matters." After receiving the email, client could not reasonably have expected that firm one would provide further legal services.[2]

Client argues that it reasonably believed that firm one would continue to provide legal services by transferring its files to Armstrong Teasdale, LLP. Client asserts, "[Firm one's] possession and transfer of [client's] files constitutes legal services." Thus, firm one's representation continued until the records were transferred on November 15, 2012.

---

[2] In its reply brief, client asserts that firm one's email was not an express notification of the termination of legal services because the email stated, "*In due course*, we will withdraw as your attorneys of record in the United States Patent and Trademark Office . . . and will advise foreign attorneys handling your matters that they should begin communicating with your named patent counsel." (Italics added.) Client contends that the "due course" language indicated that firm one would continue to provide legal services. The contention is forfeited because it was not made in client's opening brief. (*Shade Foods*, *Inc. v. Innovative Products Sales & Mktg.*, *Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10.) In any event, the acts in question - withdrawing as attorneys of record and advising foreign attorneys of new patent counsel - do not constitute the provision of legal services. (See *Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 846 ["the failure to formally withdraw as attorney of record, standing alone, will not toll the statute of limitations under the rubric of continued representation"].)

If client actually believed that firm one would continue to provide legal services by transferring its files to replacement counsel, its belief was unreasonable as a matter of law. Firm one made clear in its email that it would not provide further legal services. The transfer of the files was a clerical, ministerial activity. (See *Muller v. Sturman* (1981) 79 App.Div.2d 482, 437 N.Y.S.2d 205, 207-209 [attorney did not continue to represent client until files were returned to her because attorney had previously ceased to provide legal services].)

In *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, the court stated what has been referred to as "[a]n objective standard . . . to determine whether an attorney's representation has been continuous." (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887.) The standard is as follows: "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Worthington v. Rusconi*, *supra*, 29 Cal.App.4th at p. 1498, fn. omitted.) Client cannot prevail under this standard. Firm one's possession of client's files after November 8, 2012, and its transfer of the files on November 15, 2012, are not "evidence of an ongoing *mutual* relationship." (*Ibid*.) Nor do they constitute "activities in furtherance of the relationship." (*Ibid*.) The relationship ended no later than November 8, 2012, when client consented to firm one's withdrawal.

For the first time on appeal, client claims that firm one's representation could not have ended on November 8, 2012, because at that time it had not completed its "ethical obligations" to "allow for [a] reasonable time for the employment of [replacement] counsel" and "to insure that [client] had counsel in place to protect its intellectual property." Client relies on the Rules of Professional Conduct of the State Bar of California (Rules). Rule 3-700(A)(2) provides, "A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, [and] allowing time for employment of other counsel . . . ."

7

This issue is forfeited because client failed to raise it in the trial court. (*Winchester Mystery House*, *LLC v. Global Asylum*, *Inc.* (2012) 210 Cal.App.4th 579, 594.) In any event, the Rules were not violated because on November 8, 2012, client consented to firm one's withdrawal and requested that its files be transferred to replacement counsel, Armstrong Teasdale, LLP.

*Attorney Fees*

The trial court awarded firm one attorney fees of $140,000 pursuant to a "Legal Services Agreement" (Agreement). The Agreement provides, "In the event there is any dispute between us relating to this agreement, the prevailing party to any litigation or arbitration shall be awarded its reasonable attorneys fees and costs." The trial court reasoned, "The language of the fee provision ('any dispute between us relating to this agreement') is neither hidden nor ambiguous, and is broad enough to infer the parties' intent to include the instant professional malpractice action. [Citations.]"

Where, as here, there is no conflicting extrinsic evidence, we independently review the trial court's interpretation of the attorney fees clause. (*Tribeca Companies*, *LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1110.) A "contract containing . . . attorney fees provisions must be analyzed on its own terms, and in context, pursuant to the usual rules of contract interpretation for determining the actual intent of the parties. [Citations.]" (*Rideau v. Stewart Title of California*, *Inc.* (2015) 235 Cal.App.4th 1286, 1297.)

On May 13, 2009, the Agreement was signed by Steven Herbruck, "doing business as GoTek Energy." Client is a corporation, GoTek Energy, Inc., and Herbruck is its chief executive officer. Client argues that Herbruck signed the Agreement in his individual capacity. His signature, therefore, does not bind the corporation, which did not exist until after the Agreement was signed. Client "has forfeited this argument by failing to raise it below. [Citation.]" (*Golden State Water Co. v. Casitas Mun. Water Dist.* (2015) 235 Cal.App.4th 1246, 1259.) In its opposition to firm one's motion for attorney fees, client took a contrary position. It referred to "the Legal Services Agreement executed between Plaintiff [client] and Defendant [firm one]." If client

8

"executed" the Agreement, then it was bound by the Agreement. Client cannot change course on appeal and argue that it was not bound because Herbruck signed the Agreement in his individual capacity. (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873.)

We reject client's contention that the attorney fees clause "was not drafted with sufficient clarity as to whether it covered this legal malpractice action." The clause applies broadly to "any dispute" between the parties "relating to" the Agreement. "A 'dispute' is a . . . general term that includes any conflict or controversy," including but not limited to "a conflict giving rise to an action." (*Thompson v. Miller* (2003) 112 Cal.App.4th 327, 337.) The malpractice action arose from a dispute relating to the Agreement because it arose from firm one's negligence in securing client's patents. The first paragraph of the Agreement states: "Initially, you have asked us to help you focus your ideas on what should be patented in your 'Dynakinetic Engine', and to help you prepare a patent strategy." In the operative first amended complaint, client alleged, "The Underlying Engagement [i.e., the Agreement] included [firm one's] obligation to timely secure patent rights in all applicable foreign countries."

Client asserts, "In order to recover fees pursuant to the agreement between the parties, there necessarily must be a dispute that involves **both** contract and tort claims." Client maintains that the attorney fees clause is inapplicable because the malpractice action involves only a tort claim. "The underlying dispute was not brought pursuant to the . . . Agreement (i.e., as a breach of contract action), nor was it brought to enforce any of the provisions of the . . . Agreement."

Client's position is untenable. Parties to a contract "'may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' [Citation.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608; accord, *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1076; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341.) Section 1021 provides, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left

9

to the agreement, express or implied, of the parties . . . ." "There is nothing in the statute that limits its application to contract actions alone." (*Xuereb v. Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at p. 1341.) Thus, the attorney fees clause here applies to client's malpractice claim because it constitutes a "dispute" between the parties "relating to" the Agreement. (See *Id.*, at p. 1342 [based on "the broad right of parties pursuant to Code of Civil Procedure section 1021 to make attorney fees agreements," it "was . . . error for the trial court to conclude that Civil Code section 1717 would independently bar an award of attorney fees . . . because the causes of action argued at trial sounded in tort rather than in contract"].)

In any event, client's malpractice action sounded in both tort and contract. "Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' [Citation.] . . . When such failure proximately causes damage, it gives rise to an action in tort. . . . Since in the usual case, [as in the instant case,] the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract. *Thus legal malpractice constitutes both a tort and a breach of contract.*" (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180-181, italics added, fns. omitted.)

*Conclusion*

The record does not show why firm two waited until what it believed was the "eleventh hour" to file the malpractice action. We agree with the trial court that it waited too long.

10

The judgment and postjudgment order awarding attorney fees to firm one are affirmed.  Firm one shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


                                        YEGAN, Acting P. J.

We concur:



PERREN, J.



TANGEMAN, J.

11

Vincent O'Neil, Judge

Superior Court County of Ventura

_____

Parker Mills, David B.Parker, Joel A. Osman, and Andrew A. Talebi, for Plaintiff and Appellant.

Klinedinst, Gregor A. Hensrude, Bradley R. Cochran, and Sarah H. Lanham, for Defendant and Respondent.