Filed 1/31/17; pub. order 3/2/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| STANLEY FLAKE, Individually and as Trustee, etc., | C079790 |
| Plaintiff and Appellant, | (Super. Ct. No. 39-2013-00303351-CU-PN-STK) |
| v. | |
| NEUMILLER & BEARDSLEE et al., | |
| Defendants and Respondents. | |

Although the underlying litigation was apparently quite thorny, the issue presented by this appeal in a legal malpractice case is less complicated. Former counsel moved to withdraw from representing a client, alleging another attorney had agreed to handle--and was already handling--postjudgment motions, and that the other attorney would also handle the appeal of an adverse judgment. The client sued former counsel for malpractice more than one year after the motion to withdraw was *made*, but less than one year after the motion was *granted*. The question before us is whether the trial court properly granted summary judgment to former counsel based on the one-year statute of

limitation provided by Code of Civil Procedure section 340.6[1] on the ground that the client could not have had an objectively reasonable expectation that former counsel was continuing to represent him after the motion to withdraw had been served. We conclude the answer is "yes."

Once the former counsel told the client, via the motion to withdraw, that the case had already been handed off to another attorney, the client was on notice that former counsel was no longer working for him. As we will explain, because this lawsuit was filed more than one year after that time, no triable issue of fact remains as to the statute of limitation defense, and we shall affirm the judgment.

## BACKGROUND

Stanley Flake and other underlying plaintiffs (including attorney Richard Carroll Sinclair) sued various underlying defendants in the Stanislaus County Superior Court over the Fox Hollow real estate development. They lost at trial in 2009. At that trial, the plaintiffs were represented by the defendants in this malpractice suit, specifically, Daniel Truax and Lisa Blanco Jimenez, attorneys with defendant firm Neumiller & Beardslee (collectively, Neumiller except as noted).[2]

Neumiller filed a motion to be relieved as counsel on November 25, 2009, in part alleging that Sinclair had agreed to handle the appeal and three postjudgment motions, and "*has been handling* these motions." (Italics added.) Neumiller alleged the "clients have stated they are not opposed to the withdrawal." The motion was not opposed, and was granted on January 7, 2010.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] The trial court in the underlying case described the trial as a "morass" in a sometimes scathing 25-page statement of decision, dated August 17, 2009. Flake asserts without dispute that the underlying trial lasted 36 days. Without citation to the record, the parties agree that Jimenez was dismissed from this lawsuit. We accept as true that fact agreed in the briefing. (See *County of El Dorado* v. *Misura* (1995) 33 Cal.App.4th 73, 77.)

In a letter dated January 11, 2010, Truax informed the underlying plaintiffs:

"As you know, by order of the court served upon you last week, our firm is no longer your attorney's [*sic*] of record in this matter. I think an explanation might be helpful. As you know, over a month ago, Richard [Sinclair] circulated for signature consents to substitutions of attorneys. The consents were signed by you and our office and returned to Richard's office for signature by Richard and filing. Richard never filed those consents, thus, our motion to be relieved as attorneys was necessary and was . . . granted on January 7, 2010."

Flake sued Neumiller for legal malpractice on January 6, 2011.[3] He alleged that he and the other underlying plaintiffs had divergent interests, creating a "nonwaivable conflict" for Neumiller to represent them all, and Neumiller mistakenly characterized Flake as a plaintiff in his personal capacity, instead of as a trustee of the Capstone Trust, resulting in Flake's exposure to personal liability in the form of an attorney fee and cost award to the other side (allegedly $750,000, plus the cost of hiring counsel to represent him on appeal from the adverse judgment).

The summary judgment motion urged that upon receipt of the motion to withdraw and associated papers, served on Flake both individually and as trustee of the Capstone Trust, and Flake's failure to timely oppose the motion (by December 22, 2009), Flake "objectively had no expectation" that Neumiller would provide further legal services. Because this suit was filed more than one year after any objectively reasonable expectation ceased, it was barred by section 340.6.

Flake's opposition hinged on the proposition "that an attorney's representation does not end until the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal." (App. 174)

---

[3] Flake dismissed his first suit pursuant to a tolling agreement with Neumiller, and then filed this second suit on October 24, 2013. The parties treat the important filing date for purposes of this appeal as that of the first suit.

3

Because he filed this malpractice suit less than one year after the motion to withdraw in the underlying case was *granted*, Flake contended his malpractice suit was timely.

In opposition to the summary judgment, both Flake and Sinclair provided declarations. Flake declared he had not consented to Neumiller's withdrawal, contrary to the statement in Truax's January 11, 2010, letter. Although Flake did not recall receiving the motion to withdraw, he did not deny receiving it. He declared that he thought Truax was still representing him, but also declared that because he (Flake) had been sued in a representative capacity, he was not concerned about any personal liability, based on advice he had received from Truax.

Specifically, Flake declared as follows: "I do not have a specific recollection of receiving [the notice of motion, motion to withdraw, and supporting declaration by Truax], however, I do not deny that I received them. My state of mind from November 25, 2009 through January 7, 2010, was that Mr. Truax was continuing to and was going to continue to represent me. Mr. Truax had told me, after the trial, and before November 25, 2009, that he did not believe that attorney's fees would be awarded against any of his clients, and that if attorney's fees were awarded . . . that I would not be subject to the attorney's fee award, because I was not involved in the matters upon which the Court could base an award of attorney's fees." Until January 7, 2010, "I was not concerned about the litigation, because my state of mind was that the case had been tried, we had lost, and I was basically done with the litigation. I was not responsible for nor had I paid any costs [or] attorney's fees to my attorneys. My state of mind was that the matter had been lost and I was not going to be responsible [or] liable for any costs or attorney's fees, or payments to any party to the litigation."

Sinclair declared that at various times in the underlying case he had represented all of the plaintiffs, including Flake. After the adverse judgment, he did not speak with Flake about Flake substituting Neumiller out of the case, or "any potential or actual changes in counsel regarding any post trial motions or any tasks that needed to be

4

performed before an appeal was to be filed by appellate counsel." Sinclair denied statements in the letter Truax sent plaintiffs on January 11, 2010, to the effect that Sinclair had circulated consent to substitution forms but failed to file them.

The trial court granted summary judgment, finding that Flake had no objectively reasonable expectation that Neumiller would continue to perform legal services after it served Flake with the motion to withdraw, thus, this suit was untimely.

After a judgment was entered in conformity with the order granting summary judgment, Flake timely filed this appeal.

## DISCUSSION

In reviewing an order granting summary judgment we ascertain the pleaded issues--which outline the perimeter of materiality, view the movant's evidence strictly, and view the opponent's evidence liberally--to determine if triable issues of material fact remain. (See *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381-382.) "[W]e determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) However, we may bypass the strict "three-step paradigm for summary judgments" where, as here, there are no disputes about the record or the legal issues implicated. (*Crow v. State of California* (1990) 222 Cal.App.3d 192, 196; see *Jimenez v. Roseville City School Dist.* (2016) 247 Cal.App.4th 594, 597.)[4]

---

[4] Neumiller filed objections to some of Flake's evidence, but the trial court did not rule on them. The failure to obtain a ruling does not forfeit objections to them on appeal following a summary judgment motion (see § 437c, subd. (q)), but because the objections are not separately headed or briefed on appeal, we do not consider them. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [pre-statutory change in procedure, holding that failure to obtain ruling does not of itself forfeit objections on appeal, but objector must "renew the objections in the appellate court"].)

5

As relevant to this case, section 340.6 provides as follows:

"(a) An action against an attorney . . . shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time . . . exceed four years except that the period shall be tolled during the time that any of the following exist:

"[¶] . . . [¶]

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."

Flake does not dispute that he was on at least inquiry notice of alleged malpractice as of the time of the adverse underlying judgment, well over one year before this suit was filed.[5] Instead, as in the trial court, he contends the tolling provision provided by section 340.6, subdivision (a)(2), the so-called "continued representation" rule, applied until Neumiller's motion to withdraw had been granted.

As in the trial court, Neumiller's theory on appeal is that no reasonable client could objectively believe Neumiller was still providing legal services after receiving the motion to withdraw alleging that the case had been handed off to successor counsel (Sinclair). Sinclair was to handle the appeal of the underlying case and *was already handling* the three then-pending postjudgment motions, without objection from Neumiller's clients.

Neumiller has the better argument. The end of an attorney-client relationship is not always signaled by a bright line, but settled authorities outline the relevant rules.

Generally, an attorney has a right to end the attorney-client relationship, but when litigation remains pending, the court has control over such termination, in part to ensure

---

[5] If Flake had intended to dispute this, his failure to head and argue the point forfeits it on appeal. (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9.)

6

that the client is not harmed--for example, by abandonment of counsel on the eve of trial. An attorney cannot end the relationship simply by "ceas[ing] to act" as counsel (§ 286). (See 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, §§ 68-70, pp. 103-106; § 284, subd. 2 [attorney may be changed "Upon the order of the court, upon the application of either client or attorney, after notice from one to the other"]; *De Recat Corp. v. Dunn* (1926) 197 Cal. 787, 791 [absent mutual consent of the parties, the relationship must be terminated by the court].) In ruling on a motion to withdraw, a trial court exercises discretion. (See, e.g., *Manfredi & Levine v. Superior Court* (1998) 66 Cal.App.4th 1128, 1133, 1136; *Linn v. Superior Court* (1926) 79 Cal.App. 721, 725-726.) This stems from the court's "solemn duty to maintain professionalism and ethics." (*Manfredi*, at p. 1132; see *Mandell v. Superior Court* (1977) 67 Cal.App.3d 1, 4.)

Therefore, until a motion to withdraw is granted, it cannot be *certain* that the trial court will sever the attorney-client relationship. Based on this fact, Flake contends an attorney owes duties to the client "until a motion to withdraw is granted." But on inspection, Flake's view is both under- and overinclusive.

It is *under*inclusive because attorneys owe certain duties to former clients *after* withdrawal, such as the duty "at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e)(1); see *People v. Baylis* (2006) 139 Cal.App.4th 1054, 1065.) Further, a former attorney must cooperate with successor counsel, and not act so as to prejudice a former client. (See, e.g., *In the Matter of Riley* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 91, 115.)

It is *over*inclusive because the formal act of withdrawing does not demarcate the end of the professional relationship in the context of the legal malpractice statute of limitation. "[T]he failure to formally withdraw as attorney of record, *standing alone*, will not toll the statute of limitations under the rubric of continued representation." (*Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 846, italics added; see *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1247, fn. 2 (*GoTek*) ["the

7

acts in question—withdrawing as attorneys of record and advising foreign attorneys of new patent counsel—do not constitute the provision of legal services"]; see also *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 514, fn. 8 [tolling lasts only so long as attorney works for the client on the same "specific subject matter"; "[h]ad the Legislature intended preservation of the attorney-client relationship as a dispositive trump card, it would not have so limited the scope of the tolling exception"].)

A recent case summarizes the general rule, albeit on different facts, as follows:

"In deciding whether an attorney continues to represent a client, we do not focus ' "on the client's subjective beliefs" '; instead, we objectively examine ' "evidence of an ongoing mutual relationship and of activities in furtherance of the relationship." ' [Citations.]

"Where an attorney unilaterally withdraws or abandons his client, '*the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services.*' . . ." (*Shaoxing City Maolong Wuzhong Down Products, Ltd. v. Keehn & Associates, APC* (2015) 238 Cal.App.4th 1031, 1038-1039, italics added.)

Framed another way: " 'After a client has no reasonable expectation that the attorney will provide further legal services . . . the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, *so the tolling should end.*' " (*Gotek*, *supra*, 3 Cal.App.5th at p. 1247, italics added, quoting *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 30-31; see also *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1063.)

Contrary to Flake's view, neither *Truong v. Glasser* (2009) 181 Cal.App.4th 102 (*Truong*) nor *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488 indicate some split of authority on the applicable test. The client's reasonably objective belief controls in all cases. *Worthington* reviewed various authorities and concluded that "[c]ontinuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the

8

relationship."[6]  (*Worthington*, at p. 1498; see *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887 [quoting this passage of *Worthingon*].)  Neither *Worthington* nor *Lockley* held the client's *subjective* view controls.  (See *Gonzalez v. Kalu*, *supra*, 140 Cal.App.4th at p. 31 [discussing those cases and holding the "continuous representation should be viewed objectively from the client's perspective"].)  Although *Truong* stated:  "For purposes of the statute of limitations, the attorney's representation is concluded as to the specific subject matter *when the parties agree*, and does not depend on a formal termination like withdrawing as counsel of record" it also held that an "objective standard" applied.  (*Truong*, at p. 116, italics added; see *Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1049-1050 [noting different factors may determine whether an ongoing relationship exists in given contexts, but an objective standard always applies].)

Although Flake insists this is not a typical case of *abandonment* by counsel, we fail to see how that advances his position.  Neumiller's motion would indicate to any objectively reasonable client that Neumiller's representation of Flake was over, as it had been completely assumed by another.  Whether that relationship-ending event is properly characterized as a true "abandonment" by Neumiller or not, the motion definitively informed Flake that Sinclair was *already* handling the pending postjudgment motions and *would* handle the appeal.  Although Sinclair later denied the truth of Neumiller's statements, and Flake may have (subjectively) thought otherwise, *any objectively*

_____

[6] In *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, analyzed in *Worthington*, we did say that "the question of representation should be viewed from the perspective of the client" (*Id*., p. 1172), but we did not hold that a client's *subjective* belief controlled.  There, the client had had an "acrimonious departure" from the attorney's office and stated that "in her view the attorney-client relationship was over at that point," when she "unmistakably acted to end the attorney-client relationship." (*Id*., pp. 1172-1173)  This holding does not support the view that a client's subjective belief controls, but instead shows that there was no factual dispute about the time of termination of the relationship in *that* case.

9

*reasonable client* would have understood on receipt of the motion to withdraw that Neumiller had stopped working on the case. Therefore, Sinclair's declaration did not create a triable issue of material fact, because it does not inform as to *Flake's* objectively reasonable belief as of the time Flake was served with the motion to withdraw.

Nor did Flake's declaration raise any triable issues, because he did not dispute that he received the motion to withdraw and associated papers, which, as stated, clearly signaled to an objectively reasonable reader that Neumiller was no longer providing legal services for Flake.[7]

Accordingly, Flake cannot avail himself of the "continued representation" tolling rule provided by section 340.6, subdivision (a)(2). Therefore, based on signal facts that are not disputed, and disregarding immaterial disputes, this lawsuit was untimely and summary judgment was properly granted based on the one-year statute of limitation.

---

[7] Flake's declaration suggests he had thought the case was over based on Truax's assurances that he could not be personally liable. This suggests he did not think there was anything more for Neumiller to do, which arguably *bolsters* Neumiller's claim that Flake had no reasonable belief Neumiller was continuing to work for him. However, we do not rest our decision on this part of Flake's declaration, because, read liberally, it could merely mean Flake *subjectively* believed Truax stood ready to fend off any attempts to ascribe personal liability to Flake. (See *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 929 ["we cannot say as a matter of law that Laclette could not reasonably expect Galindo to represent her in the event of issues arising concerning the performance of the settlement"].)

## DISPOSITION

The judgment is affirmed.  Appellant shall pay respondent's costs of this appeal.

(See Cal. Rules of Court, rule 8.278(a).)

/s/
——————————————
Duarte, J.

We concur:

/s/
——————————————
Mauro, Acting P. J.

/s/
——————————————
Renner, J.

Filed 3/1/17

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| STANLEY FLAKE, Individually and as Trustee, etc., | C079790 |
| Plaintiff and Appellant, | (Super. Ct. No. 39-2013-00303351-CU-PN-STK) |
| v. | |
| NEUMILLER & BEARDSLEE et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed January 31, 2017, was not certified for publication in the Official Reports.  For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

1

BY THE COURT:


/s/
_____
Mauro, Acting P. J.


/s/
_____
Duarte, J.


/s/
_____
Renner, J.

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of San Joaquin County, Roger Ross, Judge.  Affirmed.

Downey Brand LLP, Janlynn R. Fleener and Bret F. Meich for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney, Jason E. Fellner and James A. Murphy for Defendants and Respondents.