Filed 1/26/24  Roberts v. Crandell CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| REIKO ROBERTS, | B320951 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 18STCV04640 |
| v. | |
| ZAC CRANDELL et al., | |
| Defendants and Appellants. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Mandel & Manpearl, Gerald Manpearl and Jan Goodman; Rokita Law and Amanda M. Rokita for Defendants and Appellants.

Law Office of Parag L. Amin and Parag L. Amin; Law Office of Ann Rosen and Ann Rosen for Plaintiff and Respondent.

Defendants Zac Crandell and Johnny's Bar, LLC appeal from the court's order denying their motions for attorney fees under Civil Code section 1717 after the court entered judgment in defendants' favor and against plaintiff Reiko Roberts on the ground the statute of limitations barred her claims. The court found defendants had no contractual right to attorney fees. Finding no error, we affirm the court's order.

## BACKGROUND

As this appeal concerns the court's order denying defendants' motions for attorney fees, we provide only a brief summary of the underlying facts. This litigation began in November 2018 when Roberts sued Crandell, Johnny's Bar, LLC,[1] and another business entity Crandell owned that is not a party to this appeal. Roberts alleged she and Crandell formed Johnny's Bar with Crandell as the majority, 60 percent, owner and Roberts as the minority, 40 percent, owner. Among other things, Roberts alleged Crandell breached his fiduciary duties to her, including by mismanaging and misappropriating funds from the company. Defendants filed a cross-complaint against Roberts and her separate businesses alleging she had been removed from the company, and, among other things, had breached the Johnny's Bar operating agreement and interfered in its business.

The parties demurred to each other's pleadings, resulting in some causes of action being dismissed. The parties apparently

---

[1] Johnny's Bar, LLC was formed to own and operate Johnny's Bar, a bar in Los Angeles. We refer to the defendant and the business interchangeably as "Johnny's Bar."

2

agreed to bifurcate the trial with the court first to determine whether Roberts was an owner of Johnny's Bar. The parties disputed which version of the operating agreement applied; none was signed.[2]

Ultimately, the trial court found in favor of defendants on statute of limitations grounds on Roberts's claims. The court ordered defendants to submit a judgment for the court's signature that included a dismissal of the cross-complaint. The judgment, as amended by the court, states judgment is entered in favor of defendants against Roberts on all causes of action, "and against . . . Roberts for costs in the amount of $____ and attorney's fees in the amount of $____ as allowed by law." (The court added "as allowed by law.") The judgment also states defendants' cross-complaint against Roberts "shall be dismissed upon entry of judgment and this Judgment becoming final." The court added, "Roberts to recover costs of $___ and attorney[']s fees of $_____ as allowed by law." Defendants objected to Roberts's entitlement to costs or fees because the

_____

[2]     Defendants argue the trial court determined the controlling operative agreement was that attached to Crandell's 2015 complaint against Roberts in an earlier action. As Roberts notes, the record does not include an order making that determination. Nevertheless, Roberts asked the trial court to find that version was the effective operating agreement and she had attached it to her demurrer to the first amended cross-complaint. The parties also appear to concede the attorney fee provision at issue was the same in each version of the operating agreement. Accordingly, for purposes of this appeal, we presume the trial court considered the operative agreement attached to Crandell's 2015 complaint when it decided defendants' motions for attorney fees.

3

cross-complaint was a "defense action, similar to affirmative defenses" that became moot after the court dismissed Roberts's claims. Defendants also argued they had made an offer to Roberts under Code of Civil Procedure section 998 that she had rejected.

Defendants moved for attorney fees as the prevailing parties in the action under an attorney fee clause in the Johnny's Bar operating agreement.[3] Roberts opposed the motion arguing (1) defendants were not the prevailing party as they did not receive a net monetary recovery, and (2) the attorney fee clause in the operating agreement was limited to recovery of fees incurred in an arbitration, not a court trial. Crandell replied. He argued he was the prevailing party, he was entitled to reimbursement of expenses incurred for the LLC under the operating agreement, and the parties intended for the attorney fee provision to apply to litigation. Crandell noted arbitration was not required under the agreement, and the agreement intended the parties to attempt to resolve their issues through alternative dispute resolution first, eventually requiring the losing party to pay the prevailing party's attorney fees and costs.

The court heard defendants' motions for attorney fees on March 21, 2022. The court denied both motions finding there was "no contractual right to attorney fees." There is no reporter's transcript of the hearing. The next day, defendants filed a request for a statement of decision, which Roberts opposed. After reviewing the parties' briefing on the issue, the court found

---

[3] Defendants had separate counsel and thus filed separate motions.

4

the request was untimely, and defendants were not entitled to a statement of decision as the motions for attorney fees were not a trial of a question of fact under Code of Civil Procedure section 632.

Defendants filed separate notices of appeal and proposed a settled statement. The court certified the proposed settled statement was accurate.[4]

## DISCUSSION

### 1. *Applicable law and standard of review*

Civil Code section 1717 authorizes the award of attorney fees to a prevailing party "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party." (Civ. Code, § 1717, subd. (a).) A contract's attorney fee provision " 'must be analyzed on its own terms, and in context, pursuant to the usual rules of contract interpretation for determining the actual intent of the parties. [Citations.]' " (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1249.)

In interpreting a contract, the court "give[s] effect to the mutual intention of the parties as it existed at the time of contracting." (Civ. Code, § 1636.) "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Wolf v. Walt Disney*

---

[4]    The settled statement quoted from the provisions of the operating agreement relating to nonliability of members for expenses and entitlement to reimbursement and the attorney fee provision, summarized the parties' positions, and stated the court "found that there is no contractual right to attorney fees."

*Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126 (*Wolf*); Civ. Code, § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"]; *id.*, § 1638 [the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].) We consider the attorney fee provision in context, rather than in isolation, and in light of the contract as a whole. (*Id.*, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].) Courts may consider extrinsic evidence even if the terms of a contract appear clear and unambiguous, however, if it is relevant to prove the language is "reasonably susceptible" to another meaning. (*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & R. Co.* (1968) 69 Cal.2d 33, 37; *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 538 (*Hewlett-Packard*) [" 'Extrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible." ' "].)

Generally, interpretation of a contract is a judicial function. (*Wolf, supra*, 162 Cal.App.4th at p. 1125.) Our review is thus de novo, absent any conflict in extrinsic evidence. (*Id.* at p. 1126; *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 915 (*Gilkyson*).)

**2.** ***The attorney fee provision applies only to arbitrations***

Defendants contend they are entitled to recover their attorney fees from Roberts under subsection "(4) Mediation and Arbitration of Disputes Among Members" of section "VII. General Provisions" of the operating agreement. That provision provides in full:

6

"In any dispute over the provisions of this operating agreement and in other disputes among the members, if the members cannot resolve the dispute to their mutual satisfaction, the matter shall be submitted to mediation. The terms and procedure for mediation shall be arranged by the parties to the dispute.

"If good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association. Any party may commence arbitration of the dispute by sending a written request for arbitration to all other parties to the dispute. The request shall state the nature of the dispute to be resolved by arbitration, and, if all parties to the dispute agree to arbitration, arbitration shall be commenced as soon as practical after such parties receive a copy of the written request.

"All parties shall initially share the cost of arbitration, but the prevailing party or parties may be awarded attorney fees, costs and other expenses of arbitration. All arbitration decisions shall be final, binding and conclusive on all the parties to arbitration, and legal judgment may be entered based upon

such decision in accordance with applicable law
in any court having jurisdiction to do so."

The plain, unambiguous language of the provision clearly limits the award of attorney fees to disputes resolved through arbitration: *if* the parties to a dispute agree to arbitration, *then* they "shall initially share the cost of the arbitration, but the prevailing party or parties may be awarded attorney fees, costs and other expenses *of arbitration*." (Italics added.) The award of attorney fees to the prevailing party is referred to in conjunction with the initial payment of the *cost of arbitration* by all parties, and is qualified by the descriptor "*of arbitration*," making it clear the provision is intended to apply to the party prevailing in an arbitration alone. (Italics added.) Moreover, the attorney fee provision falls under the subsection entitled, "Mediation and Arbitration of Disputes Among Members." (See *Ogburn v. Travelers' Ins. Co.* (1929) 207 Cal. 50, 52–53 [considering entire insurance policy including introductory clause or caption to interpret intended coverage].) As it is undisputed no arbitration took place here, the provision does not authorize a fee award.

Without citing any relevant authority, defendants argue because arbitration was not mandatory—and it was Roberts who chose litigation and avoided arbitration—Roberts cannot "escape" paying their attorney fees under the contract. Yet, had Roberts prevailed on her complaint, she too would have been unable to enforce the attorney fee provision of the operating agreement, having chosen litigation over arbitration.[5]

---

[5] Defendants also argue—without cognizable legal argument or citation to authority—Roberts "is acting with unclean hands"

Defendants cite *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122 to support their contention the arbitration provision in the operating agreement was nonbinding. We agree the operating agreement did not require the parties to arbitrate their disputes unless both sides consented. Roberts does not appear to contend otherwise. However, *Titan Group* says nothing about a party's ability to enforce an attorney fee provision that is part of a nonbinding arbitration provision where no arbitration has taken place.

Defendants nevertheless contend the parties intended for the prevailing party in a superior court action to be entitled to recover attorney fees. Defendants argue the parties' conduct "in their pleadings in this action indicate unequivocally that they both believed that the attorneys' fees provision in the contract applied to civil actions in the [s]uperior [c]ourt."[6] Defendants

---

by asking the court to interpret the fee provision as applicable only in arbitrated matters when she filed an action in superior court and asked for attorney fees. We need not consider this contention. (See, e.g., *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"].)

[6] Defendants' operative cross-complaint, as did its first amended cross-complaint, prayed for "[a]ttorneys' fees, expenses, and costs as per the [o]perating [a]greement." As defendants note, Roberts's demurrer to the first amended cross-complaint asked for "reasonable attorney fees and costs," and her answer to the second amended cross-complaint asked for "reasonable attorney's fees and costs from cross-complainants and their

9

also argue "Roberts' understanding that the operating agreement would grant attorneys' fees to the prevailing party, even if arbitration did not occur, is apparent in Roberts' admissions" in her reply to defendants' objection to the judgment.

As to the latter, Roberts made no such admission. In responding to defendants' objection to the court having added a space in the judgment for Roberts to recover "costs . . . and attorney[']s fees . . . as allowed by law" based on defendants' dismissal of their cross-complaint, Roberts simply acknowledged Civil Code section 1717 does not bar recovery of attorney fees on voluntarily dismissed noncontract claims if the fees clause is broad enough to encompass those claims. But she went on to argue, citing the language of the fee provision, "either neither of the parties are entitled to attorney's fees since this matter did not go to arbitration, or *if the Court is inclined to honor the prevailing party attorney's fees provision despite the language regarding arbitration,* then Roberts is entitled to move for her attorney's fees and costs for prevailing on the Cross-Complaint to the extent that Defendants are entitled to move for attorney's fees or costs on the Complaint." (Italics added.) Thus, Roberts simply argued she would have the same rights as defendants if the court were to apply the attorney fees provision despite its limitation to arbitration.

---

attorneys defending this frivolously filed and prosecuted action." Roberts's first amended complaint in turn prayed for "an award of attorneys' fees pursuant to the [o]perating [a]greement pled by Crandell in his Cross-Complaint and First Amended Cross-Complaint."

10

As for the parties' pleadings, it is the construction given the contract by the parties' conduct "*before* any controversy arises as to its meaning" that is relevant to the parties' mutual intent at the time of contracting. (*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1242, italics added [considering parties' mutual pretrial methods to evaluate rent]; see also *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 ["A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean."].) The parties' post-controversy pleadings and arguments thus are not reliable indicators of their mutual intent as it existed at the time they entered into the operating agreement. Moreover, to be entitled to attorney fees based on its opponent's prayer for them, a party must prove its opponent would have been entitled to fees if the opponent had prevailed. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 898–899; see also *Hasler v. Howard* (2005) 130 Cal.App.4th 1168, 1171 ["A prevailing party is not entitled to fees simply because the opposing party requested them."].) The mere fact both parties requested fees does not demonstrate they intended—at the time of contracting—for the prevailing party to recover attorney fees outside of arbitration.

In any event, even if the parties' pleadings and memoranda demonstrate they subjectively believed the attorney fee provision in the operating agreement applied to a superior court action, the provision is not reasonably susceptible to that interpretation. (*Hewlett-Packard, supra*, 65 Cal.App.5th at p. 538 [extrinsic evidence not admissible to give contract " ' "a meaning to which

11

it is not reasonably susceptible" ' "]; see also *Gilkyson, supra*, 66 Cal.App.5th at p. 916 [parties' intent at time they entered into contract "is interpreted according to objective, rather than subjective, criteria"].)  As we discussed, the only reference in the agreement to a prevailing party and an attorney fee award is in the context of an arbitration.  Had the parties intended for attorney fees to be recoverable in any forum, they easily could have written the clause to state the prevailing party may be awarded attorney fees, costs, and other expenses "of arbitration or litigation" or "of any proceeding" or "in connection with the parties' dispute."

Defendants also appear to argue this Court should strike the references to arbitration in the attorney fee provision as unconscionable because there is no mandatory right to arbitration under the agreement.  We treat this argument as forfeited.  Not only did defendants fail to make this so-called unconscionability argument in the trial court, they neither cite authority nor provide any rationale—other than to note the severability clause refers to a court's or arbitrator's determination that a provision is invalid or unenforceable— as to why limiting the recovery of attorney fees to instances where the parties consent to resolve their dispute through arbitration is unconscionable.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived."].)

Finally, defendants argue in their reply brief—but not in their opening brief—that Crandell is entitled to reimbursement from Roberts for expenses he incurred on behalf of Johnny's Bar in this action under section II, subsection (2) of the operating

12

agreement.  Crandell also cited this subsection, which governs
"[r]eimbursement for [o]rganizational [c]osts," in his reply
in support of his motion for attorney fees.  Whether Crandell
can recover his expenses under this provision is not relevant
to whether the agreement authorized an award of attorney fees
to the prevailing party in an action on the contract under Civil
Code section 1717, subdivision (a).  We thus do not consider
the issue and can infer the trial court did not either.  (*Denham
v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564
[appellate court indulges all presumptions to support trial court's
order on matters as to which the record is silent].)

As we have concluded the trial court correctly found the
operating agreement did not give the parties a contractual right
to recover attorney fees if they prevailed in this action, we need
not consider the parties' other contentions.

**DISPOSITION**

The court's order denying appellants Zac Crandell's
and Johnny's Bar, LLC's motions for attorney fees is affirmed.
Respondent Reiko Roberts is to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.