Filed 8/22/25  Winston v. Cebrick CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LORENZO WINSTON, | B339088 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24IWRO00492) |
| v. | |
| LAURA LEE CEBRICK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Patricia Jo Titus, Judge.  Affirmed.

Laura Lee Cebrick, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Laura Lee Cebrick appeals in propria persona from a grant of a civil harassment restraining order sought against her by Lorenzo Winston. Winston has not filed a respondent's brief. Cebrick claims the trial court erred in granting Winston's restraining order based solely on Winston's uncorroborated testimony, and the court further erred by excluding evidence offered by Cebrick. We reject these contentions and affirm.

## BACKGROUND

Cebrick was the lessee of an apartment and Winston the sublessee. At times they lived together as roommates in the apartment. Tensions arose between them, and they each filed civil harassment restraining order requests against the other.

In his restraining order request, Winston alleged that on April 6, 2024, he came home to find "raw chicken, clams and other substances ha[d] been spread all over my belongings . . . ." He claimed Cebrick was the only person who had access to the apartment, and she also monitored his social media to know when he would not be home. He further claimed on earlier occasions Cebrick had assaulted him and stolen his property, had falsified police reports claiming Winston had battered her, and had brought men to the apartment to intimidate him.

Cebrick's restraining order request is not in the record on appeal.

The trial court heard both restraining order requests at the same hearing. The parties testified and the court reviewed documentary and video evidence. The court returned the exhibits to the parties at the end of the hearing and the exhibits, including the videos and photographs, are not in the record before us.

2

Cebrick testified that Winston stopped paying rent, then became aggressive with Cebrick after she asked him to pay or move out. She testified at one point they had a "tug-of-war over a pot and pan" in which Winston "elbowed" Cebrick in the face and caused other injuries including a bruised lip and bruises on her arms and stomach, as evidenced in photographs before the court.

Cebrick also presented testimony and evidence that Winston had derided and harassed her on the internet, including providing her contact information and encouraging people to call her for sexual favors. Cebrick testified she subsequently received three text messages propositioning her.

Cebrick played a video for the court that she described as Winston telling his social media followers, "Someone come get her." Cebrick showed photos she described as responses from Winston's followers stating, "[W]e'll roll up; we're a block away; we'll pop her out"; "Mate, do you have any mace? White people love getting maced"; and "I'm on my way. Leave the door unlocked. Lo, what are you going to do, nay? Pack her out." Cebrick interpreted "[p]ack her out" to mean Winston was sending someone to shoot her.

Cebrick testified Winston installed a new lock to lock her out of the apartment and rent the apartment to someone else, and also damaged and/or stole her property. Cebrick testified the police advised her it was not safe for her to return to the apartment alone, and she was now living elsewhere.

Winston testified it was Cebrick who "went crazy" when they struggled over the pot and pan, and Cebrick hit him with the pot. He denied hitting Cebrick. He provided receipts purportedly showing he had paid at least some rent, and argued Cebrick also owed him money for taking care of her dog while she

was away on vacation. He denied providing Cebrick's personal information over the internet. He testified about the raw chicken and clam juice spread over his belongings, as he had alleged in his restraining order request. He denied renting the apartment to anyone else. He testified Cebrick revealed his personal health information over the internet, and created a website that presented Winston "as an abuser, a racist, a violent man."

Cebrick denied posting Winston's name on the internet or creating a derogatory website about him. She testified she was out of town on the date Winston claimed she vandalized his belongings, and provided evidence of an AirBnB reservation in San Diego on that date and a payment for that reservation. The court noted that the reservation and payment "doesn't establish when you actually were [in San Diego]," just that she made the reservation and paid for it.

The court issued a written order granting both restraining orders. The court found Cebrick vandalized Winston's personal property. The court further found Cebrick disclosed Winston's "private health information" on the internet.

As to Cebrick's request, the court found Winston "spoke in derogatory and profane terms" about Cebrick "during live broadcasts on social media about their ongoing dispute."

Regarding the physical struggle over the pot and pan, the court found the parties "mutually engaged in the physical altercation."

The court ordered no further harassment from either party against the other, including attacking, striking, threatening, assaulting, hitting, following, stalking, molesting, destroying personal property, disturbing the peace, surveilling,

4

impersonating, or blocking movement. The court further forbid the parties from discussing each other on the internet.[1]

Cebrick timely appealed. Winston did not appeal.

## DISCUSSION

Cebrick argues the trial court erred in issuing a restraining order against her based solely on Winston's "unsubstantiated oral statements" "without requiring any evidentiary support." (Boldface omitted.)

Contrary to Cebrick's contention that Winston offered no evidence apart from his own testimony, the record indicates Winston presented eight exhibits to the court, including screenshots, videos, photographs, and text messages. In her briefing, Cebrick does not discuss these exhibits or explain how they fail to substantiate Winston's testimony. Even if she had offered an explanation, as she attempted to do at oral argument, we could not evaluate it because she has not included Winston's exhibits (or her own exhibits) in the appellate record. (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1048, fn. 1 ["It is appellants' burden to provide an adequate record on appeal."].) Regardless, the testimony of a single witness can be sufficient evidence to support a ruling. (See *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823. Although Cebrick questions the credibility of Winston's testimony, "witness credibility is a matter within the exclusive province of the trial court, not us." (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 804–805.)

---

[1] We derive the terms of the restraining orders from the trial court's minute order and the order issued against Cebrick. The order restraining Winston is not in the record.

5

Cebrick argues the trial court erred in refusing to consider a prior restraining order entered against Winston in favor of a third party. The prior restraining order is not in the record, but as described by Cebrick to the trial court, the third party obtained a temporary restraining order against Winston in 2019 after Winston "rented a room" in the third party's house, "then stopped paying rent and attacked" the third party. The trial court stated, "The facts of that [earlier] case [are] not relevant to this matter due to the limitations I told you that are in a civil harassment restraining order case." It is not clear to what limitations the court referred.

Cebrick argues the trial court should have admitted the prior restraining order because it was relevant to Winston's "history," "motive," "patterns of behavior," and "credibility." Review of this challenge is impeded because Cebrick has not provided the prior restraining order in the record, thus barring our evaluation of its relevance. Also, Cebrick did not assert history, motive, pattern of behavior, or credibility in the trial court as bases for admission, thus forfeiting the challenge on appeal. (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1248 [issue forfeited if not raised in trial court].)

Cebrick contends the trial court "refused to view or admit" receipts with timestamps Cebrick claims established she was "at a different location at the alleged time of the incident." Cebrick also contends the court wrongly refused to admit "video footage" she argues constituted "material exculpatory evidence." (Boldface omitted.)

Cebrick provides no citations to the record, and therefore it is not clear to what evidence she is referring. Nor are there any

6

receipts or videos in the appellate record. Her reference to "receipts" we assume pertains to AirBnB receipts she offered to establish she was in San Diego on the day Winston alleged she vandalized his personal property. Contrary to Cebrick's characterization, the trial court did not exclude or refuse to consider the receipts. Rather, the trial court considered them but noted the receipts merely established Cebrick paid for an AirBnB reservation in San Diego, not that she actually was in San Diego. Again, credibility is for the trial court to determine. To the extent Cebrick's argument pertains to receipts other than the AirBnB receipts, her failure to provide adequate record citations forfeits that argument. (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 [appellate court not required " 'to perform an unassisted study of the record' "] (*Tobacco Cases*).)

As for the video the court purportedly excluded to which Cebrick provides no record citation, we assume she is referring to a video she proffered towards the end of the restraining order hearing that purportedly shows Winston going into her room. After watching the video, the trial court stated, "That's not relevant." Cebrick responded, "It's not relevant that he's going into my room?" The court said, "No."

On appeal, Cebrick makes no argument as to why the video was relevant, instead characterizing it, without explanation, as "exculpatory evidence." Failure to "provide argument" in support of a contention forfeits the issue. (*Tobacco Cases*, *supra*, 240 Cal.App.4th at p. 808.) Nor has Cebrick included the video in the record, making it impossible to determine its relevance. To the extent Cebrick's argument pertains to other video not discussed herein, those videos are not in the record, and

regardless the argument would be forfeited for lack of record citations and cogent argument.  (*Ibid*.)

## DISPOSITION

The restraining order is affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.