Filed 10/24/23  Garske v. California Automoble Insurance Company CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DONALD GARSKE et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant and Respondent. | D080685<br><br><br>(Super. Ct. No. 37-2020-00031278-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

D'Egidio & Pedroza, Arthur D'Egidio and Irving Pedroza for Plaintiffs and Appellants.

Wesierski & Zurek, Christopher P. Wesierski, Claudia Mourad and Mary H. Kim for Defendants and Respondents.

INTRODUCTION

A lithium battery caught fire in Donald and Kelly Garske's garage, resulting in the garage's destruction and smoke damage to the Garskes' residence.  Their insurer, California Automobile Insurance Company (CAIC),

paid a total of $305,651.58 for dwelling repairs, loss of personal property, and eight months of temporary housing as a result of the fire.

More than five months after the Garskes received a permit to begin dwelling repairs, and after both sides had agreed to the scope of those repairs, the Garskes fired their public adjuster and switched contractors. Repairs had not yet begun. In the next couple months, the Garskes sent CAIC a new, increased estimate for dwelling repairs and a revised inventory with hundreds of new items of personal property claimed to be damaged in the fire. The Garskes also requested an extension of their temporary housing. CAIC refused to make any additional payments to the Garskes on their claim.

The Garskes sued CAIC for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court granted summary judgment for CAIC on both counts. It found CAIC had met its initial burden of producing evidence to make a prima facie showing that its investigation and claim payments satisfied the terms of the insurance policy. After sustaining objections to much of the evidence submitted by the Garskes, the court ruled the Garskes failed to meet their shifted burden of producing admissible evidence to create a triable issue of material fact. On appeal, the Garskes assert the court erred by failing to rule on their objections to CAIC's evidence while simultaneously finding inadmissible the testimony of their expert witness and Donald Garske. They contend the court's evidentiary rulings "in essence doomed" their claims. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Insurance Coverage for the Fire Claim*[1]

A.   *The Fire*

On July 12, 2018, a fire broke out in the garage of the Garskes' home in San Diego.  The fire caused flame damage to the garage and smoke (but not flame) damage to the attached home.  The Garskes believed a lithium battery charging on a desk in the garage caused the fire.  The property was insured by CAIC under a policy covering direct physical loss.

The Garskes reported the property damage to CAIC the next day, July 13, 2018.  CAIC claims adjuster Jack Gove contacted the Garskes the same day.  The Garskes promptly hired Advantage Edge to represent them, with Michael Carter and Ann Haratyk acting as their public adjusters.  CAIC hired Koning & Associates to represent it.

B.   *Dwelling Repairs*

Lucy Fracchiolla of Koning & Associates conducted a first inspection of the insured property on July 17, 2018.  She found flame damage in the garage but not inside the Garskes' home.  On September 6, the permit for repairs to the Garskes' home was approved.

On October 16, 2018, Koning & Associates provided Gove an estimate of $90,950.97 (actual cash value) for repairs.  Gove sent a letter to Advantage

---

1    Because this is an appeal from a grant of summary judgment in favor of CAIC, we examine the evidence de novo and "our account of the facts is presented in the light most favorable to the nonmoving party below, in this case [the Garskes], and assumes that, for purposes of our analysis, [the Garskes'] version of all *disputed* facts is the correct one."  (*Birchstein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999, italics added.)

3

Edge the next day enclosing a check for the repair estimate, less the $1,000 policy deductible. He also enclosed a check for the estimated cost of demolition and fire restoration. Gove's letter stated that a contractor, James Gardner of A Premier Restoration, had estimated repairs would take four months.

Advantage Edge informed Gove on November 13, 2018 that the Garskes had not yet begun repairs because they disputed the scope of Koning & Associates' estimate. Despite repeated communications from Gove and Koning & Associates, Advantage Edge did not provide a counter-estimate until December 12. That counter-estimate, from contractor Team 1 Restoration, included $184,895.68 for dwelling repairs.

Advantage Edge informed Gove on January 14, 2019 that repairs still had not started because of the dispute over their scope. On January 22, CAIC paid the Garskes a portion of the difference in the estimates. Gove and representatives from Advantage Edge, Team 1 Restoration, Koning & Associates, and A Premier Restoration then had a conference call on February 5. All parties on that call agreed on a revised scope for dwelling repairs. The representative from Advantage Edge stated that repairs would begin consistent with the revised scope.

The next day, Koning & Associates provided Gove a revised estimate of $118,088.01 (actual cash value) for dwelling repairs. One week later, CAIC issued a supplemental payment to the Garskes to cover the full amount of the revised estimate (less the deductible). Representatives from both contractors on the February 5 conference call—Team 1 Restoration and A Premier Restoration—informed Gove they could complete the revised scope of dwelling repairs for the approved estimate amount.

By February 28, 2019, Donald Garske had refused to sign a release from his contractor, Team 1 Restoration, to begin repairs.  Garske wanted additional items included in the estimate, such as placing the HVAC system in the attic, adding a tankless water heater, and upgrading the electrical panel.  In response, Marshall Benson from Team 1 Restoration emailed Garske to cancel the reconstruction contract, stating "I believe that we are not the right company for you on this project."

On March 7, 2019, Donald Garske informed Gove that Team 1 Restoration was no longer the Garskes' contractor.  Garske also told Gove that the Garskes had fired Advantage Edge.  On March 27, Gove declined Garske's request for a re-inspection to discuss " 'differences' " in the dwelling repair estimate.

The Garskes hired RestoraCore Restoration (RestoraCore) to be their new contractor.  By April 13, 2019, RestoraCore had prepared an estimate of $199,003.15 for dwelling repairs, which the Garskes provided to Gove.  Gove had Gardner of A Premier Restoration review RestoraCore's estimate.  Gardner determined the RestoraCore estimate did not include any "necessary repairs" missing from A Premier Restoration's February 6 revised estimate.  In an April 30 letter to the Garskes, Gove acknowledged receipt of the RestoraCore estimate but stated that CAIC refused to issue any further payment for dwelling repairs.

C.  *Personal Property*

On September 11, 12, and 14, 2018, Donald Garske, Carter of Advantage Edge, Gardner of A Premier Restoration, and Fracchiolla of Koning & Associates conducted an inventory of the Garskes' personal property damaged by the fire.  Fracchiolla prepared a list of 481 "total loss" items based on the three-day inventory.  On October 30, CAIC paid the

5

Garskes the agreed amounts for the total loss items, less earlier cash advances.

More than five months later, following the Garskes' termination of their relationship with Advantage Edge, a representative of Advantage Edge sent Gove an additional total loss inventory prepared by the Garskes. On March 13, 2019, Donald Garske informed Gove the total loss inventory provided by Advantage Edge was incomplete and stated the Garskes would "be doing an independent thorough inventory of our total loss and will forward that to [Gove]." Garske requested a "comprehensive total loss inventory" from Advantage Edge on March 25 and May 1, 2019. Advantage Edge never provided the requested inventory.

The Garskes later sent Gove a new total loss inventory that contained an additional 283 items beyond those in the inventory prepared by Fracchiolla. Some of the additions to the list were items the Garskes alleged were in the vehicle that had burned in the garage. The photographs of the interior of the burned vehicle do not show any of those items. Other additions to the list included items in the garage the Garskes alleged had been reduced to char or melted plastic and various items in the home. Regarding the items in the home, CAIC had already paid for cleaning of the home contents with smoke damage. As noted previously, the inside of the home did not suffer any flame damage. CAIC refused to pay for any of the additional items identified by the Garskes.

D.    *Additional Living Expenses*

CAIC paid for temporary housing for the Garskes following the fire. Based on A Premier Restoration's estimate that repairs would take four months, Gove informed the Garskes on October 17, 2018, that CAIC would cover the Garskes' additional living expenses, including temporary housing,

6

"through the week of January 19, 2018 [*sic*]." CAIC later agreed to extend the Garskes' temporary housing to April 19, 2019, but refused to grant any further extensions. CAIC also paid for the Garskes' food expenses when they were in a hotel between July 13 and August 15, 2018.

E.    *Total Payments*

On April 23, 2019, Gove sent a letter closing the Garskes' claim. In total, CAIC had paid the Garskes $305,651.58: $154,103.17 for demolition, fire restoration, and dwelling repairs;[2] $95,535.80 for personal property transport, storage, cleaning, and replacement; and $56,012.61 for temporary housing and additional food expenses.

II.

*Motion for Summary Judgment*

After CAIC refused the Garskes' request to reopen their claim, they filed suit in September 2020. Their complaint asserted two causes of action: breach of contract and breach of the covenant of good faith and fair dealing. The Garskes alleged CAIC had breached the insurance policy "by failing to conduct a full and complete investigation into the facts, law, and circumstances of [the Garskes'] claim and by unreasonably and improperly underpaying the coverage and benefits due to [the Garskes]." The Garskes alleged CAIC had breached the insurance policy's implied covenant of good

---

[2]    Of the $154,103.17 combined for demolition, fire restoration, and dwelling repairs, $117,088.01 appears to have been for dwelling repairs. The parties' statement of undisputed facts lists three respective dwelling payments to the Garskes of $89,950.97, $12,427.67, and $14,709.37. These payments total to $117,088.01, which corresponds to the February 6 estimate of $126,363.26, less depreciation of $8,275.25 (as the Garskes' policy only provided actual cash value coverage) and the $1,000 deductible. The total of $118,088.01 at the end of Undisputed Material Fact No. 22 appears to incorrectly fail to account for the deductible.

7

faith and fair dealing for similar reasons. They alleged CAIC "made certain investigations specifically intended to deny the [Garskes'] claim as a means to deter the [Garskes] from filing a lawsuit against [CAIC]."

CAIC moved for summary judgment on both causes of action. Along with its separate statement of undisputed facts, CAIC submitted declarations from Gove, Fracchiolla, Gardner, and Benson in support of their motion, as well as a nearly 500-page compendium of evidence. The Garskes objected to portions of the Gove, Fracchiolla, and Gardner declarations.

The Garskes' opposition to CAIC's motion included supporting declarations from Donald Garske, Sean Scott of RestoraCore, and their attorney, Irving Pedroza. CAIC filed objections to almost the entirety of the Scott and Pedroza declarations, as well as portions of Donald Garske's declaration.

The trial court did not rule on the Garskes' objections to CAIC's declarations. It sustained CAIC's objections to the Scott and Pedroza declarations "in their entirety." It sustained 17 of the 21 objections to the Donald Garske declaration and overruled the remaining four.

The trial court found CAIC had met its initial burden of producing evidence to make a prima facie showing that its investigation and claim payments satisfied the terms of the insurance policy. Because of its evidentiary rulings, the court then found the Garskes had produced "[n]o admissible evidence" to show the existence of a triable issue of material fact on their breach of contract cause of action. Consequently, the court also found their second cause of action for breach of the covenant of good faith and fair dealing failed as a matter of law. The court entered judgment in favor of CAIC on both of the Garskes' causes of action.

8

DISCUSSION

I.

*The Parties' Evidentiary Objections*

The Garskes challenge the trial court's evidentiary rulings. They contend the court should have addressed and granted "the bulk of the[ir] evidentiary objections." As for CAIC's objections to their opposition evidence, the Garskes contend the court erred by sustaining objections to the declarations of Scott and Donald Garske.[3]

A.    *Standard of Review*

The parties agree we consider unaddressed evidentiary objections de novo. Such objections are presumed overruled but preserved for appellate review. (Code Civ. Proc., § 437c, subd. (q); *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 (*Reid*).) The objecting party has the burden of renewing any relevant objections "with relevant authority and legal analysis." (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 980.) "[B]ecause there was no exercise of trial court discretion" on the renewed objections, we consider them de novo. (*Reid*, at p. 535.)

In contrast, we review the trial court's affirmative rulings on evidentiary objections for abuse of discretion. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657 (*Mackey*) [explaining the " 'weight of authority' " supports an abuse of discretion standard].) An abuse of discretion occurs if a ruling was " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747,

---

3    The Garskes do not challenge the trial court's order sustaining CAIC's objections to Pedroza's declaration.

9

773 (*Sargon*).) "The party challenging an evidentiary ruling bears the burden of establishing the court exceeded the bounds of reason. [Citation.] Nevertheless, evidentiary questions at summary judgment ' "are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally." ' " (*Mackey*, at p. 657.)

B.     *The Garskes' Objections to CAIC's Evidence*

As we have noted, the trial court did not address the Garskes' objections to portions of the Gove, Fracchiolla, and Gardner declarations submitted by CAIC. We consider de novo the objections the Garskes have renewed on appeal. (*Reid, supra*, 50 Cal.4th at p. 535.)

1.     *Objections to the Declaration of Jack Gove*

Gove handled the Garskes' claim from open to close as an adjuster for CAIC. Gove's 48-paragraph declaration discussed the history of the Garskes' claim. The Garskes objected to portions of paragraphs 23 and 37–39. We sustain the objection to paragraph 23 but overrule the objections to paragraphs 37–39.

a.     Objection No. 1 (Paragraph 23)

The portion of paragraph 23 challenged by the Garskes described what Benson told Gove about conversations between Team 1 Restoration and Donald Garske:

> "Mr. Benson stated that Donald Garske was told by Team 1 Restoration to sign a release from Team 1 Restoration, pack salvageable items and dispose of total loss items, but he refused. Mr. Benson stated that Mr. Garske wanted additional work ('upgrades') to be done. Mr. Benson informed me that he told Mr. Garske that he would complete upgrades, but that Mr. Garske would need to pay for them. Mr. Benson told me Mr. Garske became upset with Mr. Benson and demanded that they reconfigure his kitchen within the cost of what was applied in the insurance scope. Mr. Benson stated that Mr. Garske told

10

> him that Mr. Garske would be putting a list together of other 'stuff' he wanted completed with no additional charge. Mr. Benson advised me that he sent Mr. Garske a 'drop email' as he realized he would not be a 'good fit' for the insured and their repairs."

The Garskes objected to this portion of paragraph 23 on the grounds it lacked relevance, personal knowledge, and foundation, as well as being speculative, argumentative, and inadmissible hearsay. Because we agree with the Garskes that this paragraph contains inadmissible hearsay (Evid. Code, § 1200, subds. (a) & (b) [" '[h]earsay evidence' " is an out-of-court statement offered to prove the truth of the matter stated and is generally not admissible]), we need not address the other grounds asserted.

The challenged portion of paragraph 23 contains multiple layers of hearsay. CAIC, however, contends it does not offer the conversation, in which Benson tells Gove why Benson has cancelled Team 1 Restoration's dwelling repair contract with the Garskes, for the truth of the statements, but rather to show what Benson told Gove to establish "*his* state of mind." (Italics added.) Although it is unclear from CAIC's briefing whether "his" refers to Benson or Gove, or how the state of mind of either person is relevant, CAIC's use of the testimony is not limited to showing state of mind.

Its motion for summary judgment declares "Team 1 Restoration canceled its contract to repair the dwelling, because Mr. Garske asked for upgrades for no additional cost." (Italics omitted.) The motion cites Undisputed Material Fact No. 27 (UMF 27) for the fact that Donald Garske requested " 'upgrades.' " UMF 27, in turn, only cites paragraph 23 of Gove's declaration for support. CAIC identifies no other portion of the record to support its contention. Even Benson's declaration does not mention "upgrades." Thus, CAIC's motion for summary judgment relies on the truth of at least one of the statements in paragraph 23. As CAIC has identified no

11

exception allowing such hearsay evidence, we sustain the Garskes' objection to paragraph 23 of Gove's declaration and do not consider it.

However, the facts established by much of the inadmissible testimony in paragraph 23 are *properly* set forth elsewhere in the record. For example, the Garskes did not object to Benson's declaration. And even though Benson's declaration does not mention "upgrades," it does state Benson canceled the repair contract because "Mr. Garske informed me that he wanted additional work to be done for no additional charge." Benson's declaration also described and attached the February 28, 2019 " 'drop email' " from Benson to Donald Garske. Additionally, in their separate statement of undisputed facts, the Garskes did not dispute that Donald Garske refused to sign a release from Team 1 Restoration. The Garskes also admitted they "informed" Team 1 Restoration of additional items they "wished to have included in the estimate." Finally, the unobjected-to portion of paragraph 23 stated that Benson and Gove had a telephone conversation on March 1, 2019, the day after Benson's " 'drop email' " to Donald Garske. The Garskes did not dispute the March 1 conversation occurred. Thus, the sustained objection to the challenged portion of paragraph 23 has little (if any) effect on the factual record.

> b.      Objection Nos. 2–4 (Paragraphs 37–39)

Paragraphs 37–39 of Gove's declaration discussed the revised personal property inventory provided by the Garskes. The challenged portion of paragraph 37 described what Fracchiolla told Gove about the revised inventory:

> "However, Ms. Fracchiolla confirmed to me that she did not see any of the additional items in the garage, and that there was no flame damage inside the house that would have caused there to be total loss items from inside the house (excluding garage). Also, some of the items added to the inventory included items claimed

12

to have been in the SUV that was in the garage, but the photographs of the interior of the SUV did not show any of the claimed items."

The Garskes objected to this testimony as not relevant, speculative, argumentative, and lacking foundation, as well as because Gove allegedly lacked personal knowledge and was not qualified as an expert witness.

On appeal, the Garskes do not renew *any* of these objections. Because they have not reasserted those objections on appeal, they have been forfeited. (See *Flake v. Neumiller & Beardslee* (2017) 9 Cal.App.5th 223, 229, fn. 4 (*Flake*) [declining to consider objections that were "not separately headed or briefed on appeal"]; *Sherman v. Hennessy Industries, Inc.* (2015) 237 Cal.App.4th 1133, 1139, fn. 1 (*Sherman*) ["As no objection has been reasserted on appeal, all have been forfeited."].)

At most, the Garskes contend in their opening brief on appeal that Gove's declaration included expert testimony "when he opines about the scope of repair and the time required to repair the damage to the [Garskes' property]." But paragraph 37 did not contain any testimony about repairs to the damaged property.[4] It only addressed the revised total loss inventory submitted by the Garskes. We question whether the Garskes have sufficiently renewed their objection to Gove's declaration on the grounds he was not a qualified expert, but even if they had, we would overrule it. The objected-to portion of paragraph 37 just relayed what Fracchiolla told Gove (the Garskes did not object on hearsay grounds); it did not offer any expert opinions from Gove.

---

[4] The Garskes did not object to any testimony from Gove about dwelling repairs in the trial court. Such objections cannot be raised for the first time on appeal. (Code Civ. Proc., § 437c, subd. (b)(5).)

13

The Garskes objected to the entirety of paragraphs 38 and 39.  In paragraph 38, Gove stated that he reviewed photographs of the Garskes' vehicle and did not see the items the Garskes added to the revised total loss inventory inside the vehicle.  The Garskes' briefing on appeal does not mention or discuss any of their original objections to this paragraph: irrelevance, lack of personal knowledge, lack of foundation, speculation, and argumentative.  The objections have been forfeited.  (*Flake*, *supra*, 9 Cal.App.5th at p. 229, fn. 4; *Sherman*, *supra*, 237 Cal.App.4th at p. 1139, fn. 1.)

The Garskes originally raised the same objections to paragraph 39, in which Gove states the Garskes did not support their claim for the new total loss items added to the revised inventory.  As with the objections to paragraph 38, none of the objections to paragraph 39 have been renewed on appeal and are therefore forfeited.[5]  (*Flake*, *supra*, 9 Cal.App.5th at p. 229, fn. 4; *Sherman*, *supra*, 237 Cal.App.4th at p. 1139, fn. 1.)

2.      *Objections to the Declaration of Lucy Fracchiolla*

Fracchiolla's 18-paragraph declaration described her involvement with the Garskes' claim as an insurance adjuster for Koning & Associates, which was hired to represent CAIC.  In the trial court, the Garskes objected to portions of paragraphs 4 and 15–17 of her declaration,[6] all on the same five

---

[5]      The Garskes' opening brief on appeal newly objects to exhibits referenced in Gove's declaration.  The Garskes have waived their objections to the exhibits by failing to raise them in the trial court.  (Code Civ. Proc., § 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing shall be deemed waived."].)

[6]      The Garskes' objections incorrectly identified the challenged paragraphs as 5, 7, and 8.  The quoted testimony they challenged actually appeared in paragraphs 4 and 15–17 of the Fracchiolla declaration.

14

grounds: relevance, lack of personal knowledge, lack of foundation, speculation, and hearsay. Because they renew none of those objections on appeal, they are forfeited. (*Flake, supra*, 9 Cal.App.5th at p. 229, fn. 4; *Sherman, supra*, 237 Cal.App.4th at p. 1139, fn. 1.)

Instead, the Garskes contend Fracchiolla offered improper expert opinions unaccompanied by "any documents or information in support of her purported expertise in general construction, mitigation, and contents handling matters." But the Garskes did not raise this objection in the trial court. It is waived and cannot be raised for the first time on appeal. (Code Civ. Proc., § 437c, subd. (b)(5).)

3. *Objections to the Declaration of James Gardner*

Gardner, as the owner of A Premier Restoration, assisted Koning & Associates with the Garskes' claim. His 19-paragraph declaration discussed his involvement with the claim, including his inspection of the property, preparation of estimates for dwelling repairs, and participation in the three-day personal property inventory. The Garskes objected to portions of paragraphs 13 and 14 on the grounds the testimony was not relevant, was speculative, and lacked personal knowledge and foundation. They have forfeited their relevance and speculation objections by not renewing them on appeal. (*Flake, supra*, 9 Cal.App.5th at p. 229, fn. 4; *Sherman, supra*, 237 Cal.App.4th at p. 1139, fn. 1.)

The Garskes' briefing on appeal raises two issues with Gardner's declaration: (1) it "is replete with inadmissible hearsay statements," and (2) "Gardner fails to append his CV to his declaration in order to lay a foundation for the opinions in his declaration." The Garskes waived their hearsay objection by not raising it in the trial court. (Code Civ. Proc., § 437c, subd. (b)(5).) As for the Garskes' other objection, Gardner's failure to attach

15

his CV did not prevent him from providing proper foundation for his testimony.

At the beginning of his declaration, Gardner testified he had "approximately 30 years of experience in the insurance property claims industry." He identified his past roles in the industry. He described the work done by his company, A Premier Restoration. Gardner stated he had "prepared thousands of construction estimates." He also listed his various certifications.

The two paragraphs challenged by the Garskes relate to the three-day personal property inventory in which Gardner participated. The preceding paragraphs of his declaration described the inventory. Then, in challenged paragraph 13, Gardner testified that "[b]ased on my experience, knowledge, education, and training": (1) "I saw that everyone was working together during the three-day inventory for the common goal of documenting the total loss items," and (2) "the three-day time period was adequate time to complete the inventory." The Garskes do not explain how appending a CV would have fixed any asserted foundational issues with this testimony. Both statements depend on Gardner's personal knowledge and observations during the inventory, rather than his past experience, notwithstanding the "[b]ased on my experience" preamble.

In the challenged portion of paragraph 14, Gardner stated, "Based upon my participation in the inspections of the subject dwelling, there was no flame damage inside of the home (just in the garage)." Like the testimony in paragraph 13, the testimony in paragraph 14 is based on Gardner's personal knowledge. He stated in unobjected-to paragraph 5 that he personally inspected the property in July 2018. To the extent Gardner's past experience aided his inspection of the property and helped him draw conclusions from it,

16

the description of his qualifications at the beginning of the declaration provided sufficient foundation. The provision of a CV was unnecessary. We therefore overrule the Garskes' objections to paragraphs 13 and 14 of Gardner's declaration.

## C. *Defendant's Objections to Plaintiffs' Evidence*

The trial court granted most of CAIC's objections to the declarations submitted by the Garskes in support of their opposition to the summary judgment motion. Those sustained objections excluded essentially the entirety of Scott's declaration and all or part of 12 of the 32 paragraphs of Donald Garske's declaration. Although the Garskes admit in their briefing on appeal that "the declarations drawn in support of the opposition to the summary judgment motion were and are inartful," they contend the trial court erred in its evidentiary rulings. Reviewing the court's rulings for abuse of discretion (*Mackey*, *supra*, 31 Cal.App.5th at p. 657), we disagree the court erred.

### 1. *Objections to the Declaration of Sean Scott*

Scott is an employee of RestoraCore, which was hired by the Garskes after Team 1 Restoration ended their involvement with the Garskes' claim. Scott served as the Garskes' "expert on the issue of scope of repair and cost of repair and restoration." His 8-paragraph declaration discussed the supplemental dwelling repairs estimate he prepared for the Garskes.

CAIC objected to paragraphs 2–8 of Scott's declaration. It argued the declaration "lays no foundation whatsoever" for Scott's expert opinions. (Boldface omitted.) CAIC pointed out the absence of any of Scott's "education, knowledge, background, training, job position, qualifications and/or experience." The trial court sustained all of CAIC's objections.

17

On appeal, the Garskes acknowledge Scott's declaration was "inartfully drafted." But they contend his declaration contained the necessary elements for an expert declaration. They assert "a simple reading of the contents of the declaration *should convey* to the reader that . . . Scott has specialized knowledge beyond that of a lay person." (Italics added.) We disagree the Scott declaration has proper foundation for his expert opinions and conclude the trial court did not abuse its discretion by sustaining CAIC's objections to paragraphs 2–8.

In those paragraphs, Scott described the repair items included in the RestoraCore estimate beyond those in the estimates prepared by Gardner. Scott testified those supplemental repair items had been "omitted or overlooked" but were "necessary to restore the home to it's [*sic*] pre-loss condition." He testified the "omissions" included labor and materials "required for proper smoke remediation,[ ]supervision,[ ]testing for volatile organic compounds (VOC's [*sic*])[,] heavy metals, dioxins, or other combustion byproducts, building code upgrades, and a host of other items." Scott testified "the Matterport scan survey," "the permitted repair plans," and "additional evidence" corroborated the supplemental repair items. He described those items as either being "concealed behind the drywall" (and subsequently revealed by removal of the drywall), or "clearly visible" and yet not included in Gardner's estimates. Scott testified that, even months after he had prepared the RestoraCore estimate, he informed Donald of other "required code upgrades from the City . . . that needed to be addressed" as supplemental repairs. Scott also testified that CAIC's denial of additional coverage "put a substantial hardship on [the Garskes] as they were forced to live in a home which was uninhabitable and was potentially hazardous to

their health as the result of the combustion byproducts and VOC's [*sic*] released in and around the home from the fire."

Scott's declaration failed to provide foundation necessary to qualify him as an expert to render the opinions stated in paragraphs 2–8. "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) The Evidence Code requires "such special knowledge, skill, experience, training, or education" to "be shown before the witness may testify as an expert." (*Ibid.*; see also *Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 779 (*Fernandez*) [holding that an expert declaration is admissible to oppose summary judgment if the testimony therein would be admissible at trial under Evid. Code, § 720].) Scott's declaration only stated he is "an employee of RestoraCore." It did not identify his exact role or position at RestoraCore, nor did it show what knowledge, skill, experience, or training he had that made him an expert on the "scope of repair and cost of repair and restoration."

The Garskes' argument that the contents of Scott's opinions implied that he had specialized knowledge is unpersuasive. If that was sufficient, virtually any declaration expressing expert opinions would be admissible, regardless of whether the declarant actually qualifies as an expert. It would render Evidence Code section 720, subdivision (a), meaningless. Moreover, the contents of Scott's declaration undercut the Garskes' position that he qualified as an expert. In paragraph 7, Scott testified: "Had I been given an opportunity or notice of an opportunity to hire the necessary experts to evaluate the loss, or discuss the items in the supplement, I would have done so."

19

The Garskes cite *Sargon* as authority for permitting Scott's expert testimony. But the trial court's exclusion of Scott's testimony does not conflict with the mandates in *Sargon*. *Sargon* requires courts to "exclude 'clearly invalid and unreliable' expert opinion," while not "weigh[ing] an opinion's probative value or substitut[ing] its own opinion for the expert's opinion." (*Sargon*, *supra*, 55 Cal.4th at p. 772.) In other words, courts may "not resolve scientific controversies." (*Ibid.*) Nothing of the sort occurred here. The trial court merely enforced the requirement that expert opinion have proper foundation, including that the purported expert have special knowledge, skill, experience, training, or education. (See Evid. Code, § 720, subd. (a).) This serves to exclude unreliable "expert" opinions (i.e., those not drawn from a specialized background). It does not amount to weighing the opinions' probative value or resolving scientific controversies. The court served the "gatekeeping role" *Sargon* requires. (*Sargon*, at p. 772.)

We conclude the trial court did not abuse its discretion in sustaining CAIC's objections to the Scott declaration.

2.     *Objections to the Declaration of Donald Garske*

Donald Garske submitted a 32-paragraph declaration regarding the history of the Garskes' claim. CAIC raised 21 objections to Garske's declaration, covering a variety of bases. The trial court sustained 17 of the 21 objections, excluding testimony from 12 paragraphs of the declaration.

On appeal, the Garskes contend the trial court's rulings on CAIC's objections were inconsistent. The Garskes point to the court's overruling of objection No. 1, including CAIC's allegation that Garske lacked personal knowledge, as inconsistent with the court sustaining other objections that also included a lack of personal knowledge allegation. But Garske having personal knowledge for *part* of his testimony does not mean he had personal

20

knowledge for *all* of his testimony. In any event, CAIC identified multiple bases for each of its objections, not just lack of personal knowledge. As the Garskes acknowledge, the court did not identify the basis or bases on which it sustained the different objections. Lack of personal knowledge is not even one of the bases for certain of the sustained objections (i.e., objection Nos. 7 and 18).

The Garskes also appear to confuse the objection numbers with the numbering of the paragraphs to which they apply. They state the court overruled an objection to *paragraph* 1, in which Garske stated "I have personal knowledge of the matters declared herein." They rely on this to argue granting any objections based on lack of personal knowledge would be inconsistent. But CAIC never objected to paragraph 1. Instead, the court overruled *objection No.* 1, which applied to paragraph 6, the first paragraph containing testimony challenged by CAIC. The Garskes' confusion is also apparent when they state multiple times that the court sustained CAIC's objections "to paragraphs 2-10, 12, 14-18 and 20-21." Those are the numbers of the objections sustained by the court, not the paragraphs to which they apply. The court's sustained objections actually apply to paragraphs 8–9, 16–18, 21, 26, and 28–32[7] of Garske's declaration. Thus, the inconsistency alleged by the Garskes appears to be a product of confusing paragraph numbers with objection numbers, rather than any abuse of discretion by the court.

---

[7] Garske's declaration has two paragraphs numbered "31." As a result, CAIC's objection No. 21 refers to the second of those paragraphs as "32," noting that it was "incorrectly misnumbered." We follow the same approach to avoid confusion. Any reference herein to paragraph 32 of Garske's declaration means the second paragraph numbered "31."

21

The Garskes further contend the court "did not heed or apply the oft quoted rule of law . . . that the Court construes the moving party's evidence strictly, and the non-moving party's evidence liberally." But aside from their mistaken complaint about the court inconsistently addressing the lack of personal knowledge objection, the Garskes do not identify where specifically the court erred in not construing their evidence liberally. They bear the burden of establishing that the court abused its discretion in sustaining evidentiary objections. (*Mackey*, *supra*, 31 Cal.App.5th at p. 657.) Moreover, the requirement of liberal construction " 'does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration.' " (*Fernandez*, *supra*, 31 Cal.App.5th at p. 779.) Our review of the sustained objections reveals no abuse of discretion.

### a. Objections to Testimony About Personal Property (Paragraphs 8, 9, and 26)

The challenged portions of paragraphs 8, 9, and 26 of Garske's declaration relate to the inventory of total loss items. In paragraph 8, CAIC objected to Garske's statement that the resulting list from the three-day inventory "was not a complete list." In paragraph 9, which CAIC objected to in its entirety, Garske stated, "I provided Mr. Gove a revised inventory list which included items that were in the garage and in the vehicle above and beyond what was visible at the time of the initial inspection as many items only myself and Mrs. Garske would have had knowledge of and were reduced to ash, or melted chunks of plastic." In paragraph 26, CAIC objected to Garske's statement that his attorney had "requested the complete inventory list from Advantage Edge" but had not received it.

The Garskes contend Donald Garske had "direct and personal knowledge" about the loss of personal property addressed by these paragraphs. However, CAIC's objections were not confined to lack of

22

personal knowledge.  Their objections to these paragraphs included lack of foundation and improper expert opinion, among others.  The Garskes do not address why CAIC's other objections do not apply to Donald Garske's testimony.

Even if we would rule differently on CAIC's evidentiary objections if they were considered de novo, that does not govern our evaluation of the trial court's rulings.  Instead, a ruling on an evidentiary objection must be " 'so irrational or arbitrary that no reasonable person could agree with it' " to require reversal under the abuse of discretion standard.  (*Sargon*, *supra*, 55 Cal.4th at p. 773.)  Mere disagreement is not enough.  (See *ibid*.)  The Garskes also bear the burden of showing the court abused its discretion.  (*Mackey*, *supra*, 31 Cal.App.5th at p. 657.)  Their conclusory statement regarding just one of the objections raised by CAIC is not sufficient to satisfy that burden.

The trial court could reasonably conclude Donald Garske's testimony in paragraphs 8 and 9 constituted improper expert opinion in declaring the extent of loss for certain personal property items.  The court also could reasonably conclude Garske's testimony in paragraph 9 that the newly added items were "above and beyond what was visible at the time of the initial inspection" (at which Garske was present) lacked foundation.  As for paragraph 26, Garske testified regarding what his attorney requested and received from Advantage Edge without explaining how he had obtained such knowledge.  The court could reasonably conclude this testimony lacked foundation and personal knowledge, as CAIC objected.  In sum, the Garskes have failed to demonstrate the court abused its discretion in sustaining CAIC's objections to paragraphs 8, 9, and 26 of Donald Garske's declaration.

Even if we were to reverse the trial court's rulings on the objections to these paragraphs, it would not change the outcome of this appeal. As we explain later, the Garskes' insurance policy required documentation for the items included in the personal property loss inventory. Donald Garske did not offer any testimony regarding the required documentation, instead contending the newly added items were known only to himself and his wife and "were reduced to ash, or melted chunks of plastic." Donald Garske's testimony cannot create a triable issue of material fact regarding the Garskes meeting the documentation requirement for the items they added to the personal property inventory.

  b.  Objections to Testimony About Dwelling Repairs
      (Paragraphs 16–18 and 21)

In paragraphs 16–18 and 21, Donald Garske testified regarding the scope of dwelling repairs. He testified in paragraph 16 that the request to change the home's electrical panel was "so that it would be brought to code," "not for additional work or for upgrades for a nicer home." He similarly testified in paragraph 21 that the supplemental repair items included in the RestoraCore estimate were "for upgrades per city ordinance," as well as repairs overlooked in prior inspections and repairs "concealed behind the drywall." He testified that CAIC's estimate "would only cover the costs for a barely habitable home." In paragraphs 17 and 18, Garske discussed Benson's cancellation of his company's reconstruction contract with the Garskes, including Garske's belief Benson "would not be making any profit on" the reconstruction contract.

The Garskes contend Donald Garske's testimony in these paragraphs was "based on personal knowledge." But they do not address any of the other objections raised by CAIC. Most notably, CAIC objected that these paragraphs contained improper expert opinion. The Garskes acknowledge in

24

their reply brief that Donald Garske "[a]s a non-contractor . . . would not have understood the many facets of property repair and restoration." Yet the testimony in these paragraphs covers property repair and restoration. The trial court could reasonably conclude paragraphs 16–18 and 21 of Donald Garske's declaration contained expert testimony he was not qualified to provide. It therefore did not abuse its discretion in sustaining CAIC's objections to these paragraphs.

          c.      Objections to Testimony About Additional Living Expenses (Paragraphs 28–32)

Paragraphs 28–32 of Donald Garske's declaration contain testimony related to the Garskes' additional living expenses as a result of the fire. The Garskes contend this testimony is based on Donald Garske's personal knowledge, but, again, they fail to address any of the other objections raised by CAIC. We conclude the trial court did not abuse its discretion in sustaining CAIC's objections.

In paragraph 28, Donald Garske testified that Gove told Kelly Garske "she could 'live under a bridge for all I care' " when additional living expenses were discussed. CAIC objected to this testimony as containing double hearsay and lacking foundation and personal knowledge. As the testimony at least contains hearsay regarding what Gove said and also does not have an accompanying explanation regarding how Donald Garske knew what was said, the court did not abuse its discretion in excluding this testimony.

Paragraph 29 included testimony regarding the effect the damage to the Garskes' home had on their neighbors' property. This testimony has no apparent relevance to this case, and CAIC objected on that basis. Neither Donald Garske's declaration, nor the Garskes' briefing on appeal explain its relevance. The court did not abuse its discretion in excluding this testimony.

In paragraph 30, Donald Garske testified the Garskes "were forced to move back into an uninhabitable home" when CAIC stopped paying for temporary housing. CAIC objected to this testimony as improper expert opinion. Given Donald Garske's description of the home as "uninhabitable," the court did not abuse its discretion in sustaining CAIC's objection.

In paragraph 31, Donald Garske testified that CAIC's refusal to make further payments caused the Garskes "substantial financial hardship." He does not explain what he means by "substantial financial hardship." Nor does he offer any explanation as to why the absence of further payments from CAIC caused such hardship. The court did not abuse its discretion in sustaining CAIC's objection to this testimony, which CAIC contended was conclusory and lacked foundation.

In paragraph 32, Donald Garske testified his daughter "was forced to live in Colombia with family members while we made the home habitable." He also testified the home "[t]o date . . . has not been returned to its pre-loss condition." CAIC objected to both statements as conclusory, lacking foundation, and improper expert opinion. Garske offered no explanation as to why his daughter was "forced to" live in Colombia. He also provided no basis for concluding the home had not returned to the "pre-loss condition," much less explained his understanding of that term. The court did not abuse its discretion in excluding the testimony in paragraph 32.

II.

*The Garskes Fail to Present a Triable Issue of Material Fact on Their Claim for Breach of Contract*

The Garskes contend the trial court granted summary judgment for CAIC "not on the merits of [CAIC's] motion, but on the basis of disallowing all the evidence submitted by [the Garskes] in opposition to the motion." The

26

court did not disallow "all" of the Garskes' evidence, as they claim, but did sustain objections to almost the entirety of the testimony of Scott, the Garskes' expert. The Garskes acknowledge this "in essence doomed [their] ability to overcome [CAIC's] motion." The court also sustained objections to significant portions of Donald Garske's declaration. As we have explained, the court did not abuse its discretion in sustaining CAIC's objections.

The Garskes separately contend the court erred in finding CAIC met its burden of production for summary judgment on the Garskes' cause of action for breach of contract. We have already overruled all but one of the Garskes' objections to CAIC's evidence. Based on the non-excluded evidence, we conclude the trial court did not err in granting summary judgment for CAIC that its investigation and claim payments satisfied the terms of the insurance policy.

A.     *The Law of Summary Judgment and Standard of Review*

Summary judgment is appropriate when the moving party establishes there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant moving for summary judgment has the initial burden of presenting evidence sufficient to establish the plaintiff either cannot prove at least one element of, or that there is a complete defense to, each cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant does so, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (*Ibid.*) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to make a factual finding that is necessary under the pleadings in favor of the plaintiff. (*Aguilar*, at pp. 843, 850.)

27

On appeal from a summary judgment, "we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) However, " '[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

B.  *Dwelling Repairs*

The Garskes first dispute whether CAIC's payments for dwelling repairs were adequate under the insurance policy. The Garskes' insurance policy with CAIC covered physical loss to the "dwelling" on the Garskes' property, along with "structures attached to the dwelling." The policy uses "[a]ctual cash value" to determine any payments required for physical loss. It defines "[a]ctual cash value" for a partial loss as "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation."

CAIC's motion for summary judgment contended the $117,088.01 CAIC paid the Garskes for dwelling repairs satisfied CAIC's obligations under the insurance policy. In support of its contention, CAIC submitted the Gove, Gardner, and Benson declarations. Gove testified regarding the amounts paid to the Garskes for dwelling repairs. He testified that the $117,088.01 paid for dwelling repairs (see fn. 2, *ante*) reflected an estimate of $126,363.26, less amounts for depreciation (under the "actual cash value" provision) and the Garskes' $1,000 deductible. He further testified that an agreed scope of dwelling repairs resulted from the February 5, 2019 conference call attended by Gove, Gardner, Benson, Haratyk, and Fracchiolla. Both Benson and

28

Haratyk had been retained by and represented the Garskes as of the time of that call.

Gardner testified that on February 6 he prepared the revised estimate for $126,363.26 of dwelling repairs based on the agreed scope during the February 5 conference call. He further testified that his company, A Premier Restoration, "was ready, willing, and able to complete the repairs pursuant to the scope of work" agreed upon during the February 5 call and reflected in his revised estimate. Benson testified that, as the contractor hired by the Garskes, he participated in the February 5 call and received the revised estimate prepared by Gardner. Benson informed Gove that his company, Team 1 Restoration, agreed with the revised estimate and could perform the work for the estimated price. The Garskes did not submit objections to any of this testimony from Gove, Gardner, and Benson.

Based on the above evidence, we conclude, as the trial court did, that CAIC met its initial burden of production to show the Garskes' claim for breach of contract could not be established. On appeal, the Garskes allege two primary issues with CAIC's evidence regarding dwelling repairs. Neither is persuasive.

First, the Garskes contend the Gardner declaration contains only conclusory statements regarding the scope of repairs. But the Garskes failed to raise these evidentiary objections with the trial court. As a result, they are now waived. (See Code Civ. Proc., § 437c, subd. (b)(5).)

Second, the Garskes contend Gove violated California Code of Regulations, title 10, section 2695.9, subdivision (d), by rejecting the later RestoraCore repair estimate commissioned by the Garskes. That regulation requires an insurer to take one of three actions if an insured "contends, based upon a written estimate . . . that *necessary* repairs will exceed the written

29

estimate prepared by or for the insurer." (Cal. Code Regs., tit. 10, § 2695.9, subd. (d), italics added.) The insurer may (1) pay the difference between its estimate and the insured's higher estimate; (2) provide the insured with the name of an individual or entity that will make the repairs for the insurer's estimate, provided that those repairs "cause the damaged property to be restored to no less than its condition prior to the loss"; or (3) "reasonably adjust" the insured's higher estimate. (*Ibid.*)

CAIC asserts the Garskes raise this argument for the first time on appeal. The Garskes do not dispute that assertion. They have therefore waived this argument. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [" ' " 'issues raised for the first time on appeal which were not litigated in the trial court are waived' " ' "].) But even if the Garskes had raised it in the trial court, we would conclude CAIC satisfied its regulatory obligations. Gove testified he sent the RestoraCore estimate to Gardner for review. After completing his review, Gardner informed Gove the RestoraCore estimate did not include any "necessary repairs" missing from his February 6 revised estimate. Pursuant to the second option of the applicable regulation, Gove informed the Garskes that both A Premier Restoration and Team 1 Restoration could complete the previously agreed repairs for the estimated amount. Contrary to the Garskes' claim, Gove's actions complied with the applicable regulatory requirements.

Like the trial court, we conclude CAIC met its burden of production to show the Garskes' claim for breach of contract failed regarding the alleged insufficiency of payments for dwelling repairs. This shifts the burden to the Garskes to show the existence of a triable issue of material fact. The trial

court found that the Garskes had not presented any admissible evidence to create a factual dispute. We agree.

In arguing for the existence of a triable issue of material fact, the Garskes rely almost solely on the declarations of their purported expert, Scott, and Donald Garske. However, as we have explained, the trial court did not abuse its discretion in sustaining CAIC's objections to the relevant portions of those declarations. Those declarations do not contain *admissible* evidence showing that the February 5 agreed scope of repairs "failed to take into consideration several code upgrades that were required," as the Garskes contend. Indeed, the Garskes have presented no admissible evidence showing that the RestoraCore estimate contained any "necessary" repairs missing from Gardner's February 6 estimate. They have nothing to rebut Gardner's testimony to the contrary.

The Garskes contend Benson's cancelation of Team 1 Restoration's reconstruction contract with the Garskes resulted from the February 6 estimate being insufficient to complete the necessary repairs. But Benson's declaration contradicts the Garskes' *unsupported* allegation. Benson testified, "I did not think Team 1 [Restoration] was the right fit for the project since Mr. Garske informed me that he wanted additional work to be done for no additional charge." Benson's testimony comported with the cancelation email he sent to the Garskes, which he attached as an exhibit to his declaration. The Garskes argue Benson's statement in the email that the insurance settlement was " 'bare bones' " indicates its insufficiency. However, nothing in the email indicates Benson understood " 'bare bones' " to mean anything other than that the settlement was the minimum amount necessary to repair the Garskes' dwelling to its pre-loss state, consistent with the insurance policy.

The Garskes have failed to present a triable issue of material fact that CAIC breached the insurance policy by paying an insufficient amount for dwelling repairs.

C.    *Personal Property*

The Garskes next allege CAIC breached the insurance policy by not paying for all of the total loss personal property items identified by the Garskes.  The insurance policy provided coverage "for direct physical loss" to personal property caused by fire or smoke.  It required the insured to (1) "[p]repare an inventory of damaged personal property showing the quantity, description, 'actual cash value' and amount of loss"; and (2) "[a]ttach all . . . documents that justify the figures in the inventory."

CAIC's motion for summary judgment contended CAIC's payments for the total loss items identified during the three-day inventory, as well as for cleaning of smoke-damaged items within the home, satisfied its obligations under the insurance policy.  In support of its contention, CAIC submitted the Gove, Gardner, and Fracchiolla declarations.  Gove testified regarding the payments made for replacement and cleaning of damaged personal property. Gardner and Fracchiolla testified regarding what occurred during the three-day inventory of total loss items in September 2018, in which Donald Garske and a representative from his public adjuster participated.  Fracchiolla testified that the total loss inventory was "comprehensive."  We have overruled the Garskes' objections to Gardner's and Fracchiolla's testimony about the inventory.

Fracchiolla testified that in 2019 she received and reviewed a revised total loss inventory list prepared by the Garskes that included 283 new items. The new total loss items were alleged to have been in the garage, in a vehicle within the garage, and within various rooms in the house.  Fracchiolla

testified she did not see any of the new total loss items from the garage during the three-day inventory. Nor did they appear in any of the photographs from the inventory, or have any physical substantiation. As for the new total loss items allegedly in the vehicle, both Fracchiolla and Gove testified they did not appear in photographs of the vehicle's interior. Nor did Fracchiolla see them during the three-day inventory. Finally, for the new total loss items within the house, Fracchiolla testified that her inspection revealed no flame damage to those areas of the house. She testified that those items could have been cleaned to the extent they were smoke damaged and thus were not a total loss. We have overruled the Garskes' objections to Fracchiolla's testimony on this issue.

Based on the evidence submitted by CAIC, we agree with the trial court that CAIC met its burden of production for summary judgment regarding the Garskes' personal property. CAIC's evidence showed that the new total loss items claimed by the Garskes lacked substantiation. This shifts the burden to the Garskes to establish a triable issue of material fact.

The Garskes attempt to rely on the declaration of Donald Garske to show the existence of a disputed factual issue. But, as we have explained, the court did not abuse its discretion in sustaining CAIC's objections to Donald Garske's testimony on this issue. Moreover, Donald Garske's testimony did not offer any substantiation for the new total loss items. With or without his testimony, the Garskes have no evidence to oppose the substantial evidence presented by CAIC. As a result, the Garskes have not presented a triable issue of material fact on their claim that CAIC breached the insurance policy by underpaying the Garskes' personal property losses.

33

D.    *Additional Living Expenses*

The Garskes' final argument that CAIC breached the insurance policy focuses on CAIC's allegedly insufficient payment for the Garskes' additional living expenses. The insurance policy covered "any necessary increase in living expenses" when a loss made the insured residence "not fit to live in." It provided that "[p]ayment will be for the shortest time required to repair or replace the damage."

CAIC's motion for summary judgment contended CAIC's payments for eight months of temporary housing for the Garskes satisfied its obligations under the insurance policy. In support of its contention, CAIC submitted the Gove and Gardner declarations. Gardner testified that a repair permit issued September 6, 2018 would have allowed the beginning of dwelling repairs. Gove testified that he made the first payment for dwelling repairs on October 17, 2018, followed by smaller supplemental payments in January and February 2019. On the same day as the first dwelling repair payment, Gove informed the Garskes' public adjuster that Gardner had estimated repairs would take four months total, and less than that for the main residence. Gove testified he did not receive a counter-estimate for dwelling repairs from the Garskes' public adjuster until mid-December 2018. Dwelling repairs had not started by February 5, 2019, at which time the parties agreed on a scope for those repairs. Gove subsequently learned that the Garskes had changed contractors. Gove extended the Garskes' temporary housing through April 19, 2019 but refused to extend it any further because of alleged delays by the Garskes and their hired representatives. He testified that the temporary housing covered eight months in total at a cost to CAIC of $53,829.07.

34

We agree with the trial court that CAIC produced sufficient evidence to show it had not breached its contractual requirement to cover the Garskes' "necessary increase in living expenses." This again shifts the burden to the Garskes to show the existence of a triable issue of material fact. The Garskes again rely on testimony of Donald Garske to show a disputed factual issue. However, his declaration did not dispute the timeline laid out in the Gove declaration. He acknowledged having a permit for dwelling repairs in September 2018 and receiving the first payment from CAIC for dwelling repairs in October 2018. Donald Garske acknowledged the Garskes' public adjuster "was unresponsive to communications . . . from CAIC and ourselves, causing unnecessary delays." In total, the non-excluded portions of Donald Garske's declaration do not present a triable issue of material fact regarding whether the eight months of temporary housing was sufficient to complete the dwelling repairs.

Because the Garskes have failed to present a triable issue of material fact on any of the alleged breaches of contract by CAIC, we affirm the trial court's grant of summary judgment in favor of CAIC on that cause of action.

III.

*In the Absence of a Viable Claim for Breach of Contract, the Garskes' Remaining Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Cannot Stand*

The Garskes have not shown that CAIC breached its obligations under the insurance policy. The factual record indicates that CAIC thoroughly investigated the Garskes' claim and promptly made payments pursuant to the policy. Under these circumstances, we cannot conclude that CAIC breached the implied covenant of good faith and fair dealing. (See *Sawyer v. Bank of America* (1978) 83 Cal.App.3d 135, 139 ["the tort of breaching an

35

implied covenant of good faith and fair dealing consists in bad faith action, extraneous to the contract, with the motive intentionally to frustrate the obligee's enjoyment of contract rights"].)  We affirm the trial court's grant of summary judgment to CAIC on the Garskes' second cause of action.

DISPOSITION

The judgment is affirmed.  CAIC is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.

36