Filed 2/23/24  Attayeb v. Mullenweg CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ASMAHAN ATTAYEB,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW C. MULLENWEG et al.,<br><br>        Defendants and Appellants. | A166482<br><br><br>(San Francisco City and County<br>Super. Ct. No. CGC-22-600093) |
| JENNIFFER L. WESTMORELAND,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW C. MULLENWEG et al.,<br><br>        Defendants and Appellants. | <br><br><br><br>(San Francisco City and County<br>Super. Ct. No. CGC-22-600095) |

Asmahan Attayeb and Jenniffer L. Westmoreland sued Matthew C. Mullenweg, Kathleen Mullenweg, and Audrey HC, LLC (collectively, appellants), alleging causes of action relating to their employment.[1]  In response, appellants moved to compel arbitration based on agreements they claimed Attayeb and Westmoreland electronically signed.  The trial court denied the motions, concluding that appellants failed to meet their burden to establish the existence of a valid arbitration agreement signed by either plaintiff.  On appeal (Code Civ. Proc., § 1294, subd. (a)),

---

[1] We use only Matthew's and Kathleen's first names for clarity.

1

appellants insist the trial court erred by applying the wrong legal standard. We disagree and affirm.

## BACKGROUND

Audrey hired Attayeb and Westmoreland to provide in-home nursing and personal assistance services to Matthew's mother, Kathleen. After resigning from their roles in 2022, Attayeb and Westmoreland each filed a complaint against appellants, which alleged (among others) causes of action for violation of the Labor Code, wrongful termination, and sexual harassment.

Appellants moved to compel arbitration, arguing that both Attayeb and Westmoreland had electronically signed binding arbitration agreements. Appellants' motions were supported by declarations from Matthew and Ryan Wehr, the Director of Product Management for Insperity PEO Services, L.P. Matthew's declarations attached (as exhibits) copies of the arbitration agreements purportedly signed by Attayeb and Westmoreland.

Matthew's declarations state that, as its manager, he is familiar with Audrey's on-boarding policies and processes; that Audrey has a "comprehensive arbitration program"; and that Audrey uses Insperity as a "professional employer organization" to handle payroll and other human resources matters.

At the conclusion of his declarations, Matthew states that Audrey's employment files, which it prepares and maintains in the regular course of business, contain arbitration agreements signed (respectively) by Attayeb and Westmoreland. The attached arbitration agreements show printed electronic signatures for "Asmahan Attayeb" and "Jenniffer Westmoreland (vwbeetle24)" on the respective signature lines, along with the dates "11/1/2021" and "2019.02.28" (respectively).

2

Wehr's declarations describe the onboarding process and security procedures Insperity uses to collect electronic signatures on behalf of its clients. To begin reading and signing the onboarding paperwork, which is hosted through Insperity's secure online onboarding system, "[e]ach clients' new worksite employee" must begin by creating a "unique identification and password to enter the system by inputting their personal information," including their last name, date of birth, social security number, phone number, and e-mail address. Wehr states, "The . . . employee cannot proceed to the onboarding documents until they have inputted the required personal information" and "cannot enter the system without entering [the] Login Id and password."

Attayeb and Westmoreland opposed appellants' motion to compel arbitration. Both argued (primarily) that appellants failed to establish the authenticity of the electronic signatures on the arbitration agreements. In support, Attayeb and Westmoreland each filed a declaration in which they stated that they "never saw, reviewed, received, submitted, agreed, consented to or signed" (electronically or otherwise) an arbitration agreement while working for appellants. Each further stated, "[h]ad I been told that I would be required to enter [such] an agreement . . . , I would not have accepted the job."

Attayeb and Westmoreland also filed a declaration from a former Audrey employee, Jane Weber, who stated that, as Audrey's Director of Estate Operations, she was responsible for hiring and supervising Kathleen's nursing staff and personal assistants, including Attayeb and Westmoreland. Weber stated that Audrey did not require arbitration agreements for her position or for any of the Audrey employees she supervised. She also declared that she personally observed Matthew's chief of staff, Sadie Ferguson, processing paperwork for new hires. When

3

appellants filed their reply briefs, they raised numerous objections to the Weber declarations.

The trial court denied appellants' motions to compel arbitration but did not rule on the evidentiary objections. No statement of decision was requested or issued, but the court implicitly found that appellants failed to meet their burden to show that either electronic signature was "the act of" Attayeb or Westmoreland. (See Civ. Code, § 1633.9, subd. (a).)[2]

## DISCUSSION

Appellants contend that they met their burden to prove the existence of a valid arbitration agreement between the parties and that the trial court, in concluding otherwise, misconstrued the law. We disagree.

### 1.

"When . . . the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) Under that standard, " ' "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Id.* at p. 1067.)

" ' "[I]t is almost impossible for [the party bearing the burden of proof] to prevail on appeal by arguing the evidence compels a judgment in [its] favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of

---

[2] Undesignated statutory references are to the Civil Code.

4

proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' " (*Fabian, supra,* 42 Cal.App.5th at p. 1067.)

Furthermore, because appellants did not request a statement of decision (Code Civ. Proc., §§ 632, 1291), "we apply the doctrine of implied findings and presume the court made all factual findings necessary to support its order—to the extent substantial evidence supports such findings." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 (*Ruiz*).)

**2.**

Because the existence of an agreement to arbitrate is a statutory prerequisite to granting a petition to compel arbitration (Code Civ. Proc., § 1281.2), " 'the petitioner bears the burden of proving its existence by a preponderance of the evidence.' (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature. (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).) Where . . . the respondent challenges the validity of the signature, however, the petitioner must 'establish by a preponderance of the evidence that the signature was authentic.' (*Ibid.*) In such proceedings, 'the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543-544 (*Bannister*), parallel citations omitted.)

"[S]ection 1633.9, subdivision (a) governs the authentication of electronic signatures. It provides that an electronic signature may be attributed to a person if 'it was the act of the person.' (. . . § 1633.9, subd. (a).) Further, '[t]he act of the person may be shown in *any* manner, *including a showing of*

5

*the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable.'* (*Ibid*.) For example, a party may establish that the electronic signature was 'the act of the person' by presenting evidence that a unique login and password *known only to that person* was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." (*Bannister, supra*, 64 Cal.App.5th at p. 545, italics added.)

**3.**

Attayeb and Westmoreland met their burden to challenge the signatures on the arbitration agreements; thus, appellants were required to demonstrate that Attayeb and Westmoreland did, in fact, sign the documents electronically. (See *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1124-1125; *Ruiz, supra,* 232 Cal.App.4th at p. 846.)

Appellants argue that the trial court applied the wrong legal standard for authenticating an electronic signature with circumstantial evidence of the employer's security practices and procedures. They claim the trial court improperly refused to find the signatures authentic absent direct evidence—i.e., testimony from a witness who watched the employee electronically sign an arbitration agreement. They are mistaken.

In its written orders denying the motions, the trial court recognized that circumstantial evidence of authenticity could suffice. The court explained: Appellants' "evidence of [Attayeb's and Westmoreland's] login and the procedure [they] had to follow to electronically sign, does not also prove the signature on the arbitration agreement was 'the act of the person' under [section 1633.9, subdivision (a)] *when Defendant does not also provide evidence that the employee's actions were the exclusive way an acknowledgement form bearing the employee's credentials could be*

6

*created*, *or* that the employer observed the employee click the 'I accept' button to sign." (Italics added.)

The trial court's explanation is entirely consistent with section 1633.9 and this Division's statement of the rule (above). (See *Bannister, supra*, 64 Cal.App.5th at p. 545, italics added; accord, *Trinity v. Life Ins. Co. of North America, supra,* 78 Cal.App.5th at p. 1125; *Ruiz, supra,* 232 Cal.App.4th at pp. 843-845.)

Although "the burden of authenticating an electronic signature is not great" (*Ruiz, supra,* 232 Cal.App.4th at pp. 844-845), the trial court did not err in finding appellants failed to meet it here. True, appellants did present *some* evidence suggesting that it was Attayeb and Westmoreland who affixed the electronic signatures to the arbitration agreements. Wehr's declaration establishes that someone—with access to Attayeb's and Westmoreland's personal information—would have had to set up unique IDs and passwords and that the onboarding documents (including the arbitration agreement) could only be accessed with that information.

Furthermore, appellants' evidence included Insperity's audit records, which track every step of the onboarding process, including each instance of a user accessing, modifying, or executing a form. Insperity's audit records, attached to Wehr's declaration, show that Westmoreland's on-boarding forms were completed by someone using the login ID "vwbeetle24." "[V]wbeetle24" began the on-boarding process at 1:31 p.m. on February 27, 2019, and completed it at 8:08 a.m. on February 28, 2019. The audit records associated with Westmoreland show that the arbitration agreement was electronically signed at 8:04 a.m. on February 28. The same records show that "vwbeetle24" elected to participate in direct deposit less than a minute later, at 8:05 a.m., and then at 8:06 a.m. entered bank account information.

7

Insperity's audit records similarly show that Attayeb's on-boarding forms were completed by someone who selected the login ID "asmaattayeb." "Asmaattayeb" began the on-boarding process at 6:48 p.m. on November 1, 2021, and completed it at 8:04 p.m. the same day. The audit records associated with Attayeb show that the arbitration agreement was electronically signed at 7:51 p.m. on November 1. The same records show that "asmaattayeb" completed a form regarding paid sick leave less than a minute later, at 7:52 p.m., and then at 7:57 p.m. and 7:59 p.m. (respectively) elected to participate in direct deposit and entered bank account information.

However, even after the plaintiffs denied signing the arbitration agreement, appellants did not explain how the electronic signatures could have only been placed by Attayeb and Westmoreland. Neither Wehr's declaration, nor Matthew's, establish that *only* Attayeb and Westmoreland could have electronically signed the arbitration agreements because *only* they had access to the IDs and passwords (or the underlying personal information). Neither declaration provides any insight about how Audrey handles its employees' personal data or their Insperity login information. In fact, Matthew does not in any way explain the basis for his inference that the electronic signatures on the documents were the acts of Attayeb and Westmoreland.

Appellants misplace their reliance on *Espejo, supra*, 246 Cal.App.4th 1047. In that case, to authenticate an electronic signature, the defendant submitted a declaration from its systems consultant who detailed the company's "security precautions regarding transmission and use of an applicant's unique username and password." (*Id.* at p. 1062.) Specifically, the systems consultant stated that the agreement was emailed to the applicant, that access to the agreement required a username and password that was only "provided by phone 'directly and

orally to the applicant,' " and that to proceed the applicant was required to immediately reset the password. (*Id.* at p. 1053.) The *Espejo* court concluded that these details were sufficient to establish that the electronic signature was "the act of" the plaintiff (§ 1633.9, subd. (a)) even if Espejo "did not 'recall seeing or accessing' " the arbitration agreement. (*Espejo, supra,* at pp. 1054, 1062.)

In contrast, here, Attayeb and Westmoreland affirmatively denied signing an arbitration agreement. And there is additional countervailing evidence suggesting someone else at Audrey may have electronically signed the agreements. Weber's declaration states that she observed Matthew's chief of staff processing the onboarding forms for some unidentified Audrey employees. Attayeb also presented a text chain showing that she had provided Matthew, on November 2, 2021, with her social security number and copy of her driver's license so that *he* could complete the I-9 form. According to Wehr, that same personal information is used by the *employee* to create a unique identification and password.

Westmoreland said that she did not even own a computer at the time she purportedly signed the arbitration agreement. Yet appellants do not refute this point with evidence, for example, that Westmoreland electronically signed the agreement on a computer at work (see *Bannister, supra,* 64 Cal.App.5th at p. 546) or that Audrey sent a hyperlink to her email address. (See *Espejo, supra,* 246 Cal.App.4th at p. 1053.) In fact, neither Matthew, nor Wehr, provided any evidence about *Audrey*'s procedures for guiding a new hire to the online Insperity portal, much less any evidence about *Audrey*'s security procedures for transmission and use of its employees' Insperity IDs and passwords. (Cf. *id.* at p. 1062.)

Appellants point to the Insperity audit records and the fact that neither plaintiff disputes receiving direct deposit of their

9

paychecks.  On this record, the evidence does not compel a finding that Attayeb and Westmoreland themselves entered the necessary information.  (See *Bannister, supra,* 64 Cal.App.5th at p. 548 ["[defendant] does not explain the basis for its assumption that no one other than the employee could complete a W-4 or emergency contact form"].)  We cannot reweigh the trial court's implicit finding that Attayeb's, Westmoreland's, and Weber's declarations are credible.  (*Fabian, supra*, 42 Cal.App.5th at p. 1067.)

Appellants' evidence was neither uncontradicted nor " ' " 'of such a character and weight as to leave no room for a judicial determination' " ' " that it was insufficient to meet their burden. (*Fabian, supra,* 42 Cal.App.5th at pp. 1067, 1070.)  The trial court was not compelled to find the electronic signatures authentic.

**4.**

Appellants ask us to ignore Weber's declaration, asserting (in conclusory fashion) that it lacks foundation.  We assume (without deciding) that appellants' failure to obtain a ruling from the trial court did not forfeit their objections to Weber's declaration and that her declaration was admitted.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1089.)  Nonetheless, we conclude that any evidentiary challenge was forfeited by appellants' failure to adequately brief it on appeal. (See *Reid, supra,* at p. 534; *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 463; *Flake v. Neumiller & Beardslee* (2017) 9 Cal.App.5th 223, 229, fn. 4.)

Appellants raised more than 50 objections to Weber's declaration below.  But their opening brief fails to identify which implicit rulings they challenge on appeal.  They also fail to cite any authority in support of their evidentiary argument.  It is not

10

our role to construct arguments on appellants' behalf. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

**5.**

Appellants also insist that the trial court (a) failed to resolve factual disputes, and (b) could not do so without holding an evidentiary hearing. They are wrong.

First, appellants' failure to request a statement of decision forfeits their argument that the trial court failed to make express findings. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237; *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.)

Second, trial courts properly resolve petitions to compel arbitration via summary procedure. (Code Civ. Proc., § 1290.2; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 ["trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination"].) Appellants did not ask the trial court for an opportunity to present oral testimony. Accordingly, appellants forfeited any argument that the court abused its discretion by resolving conflicts without an evidentiary hearing. (See *People v. Coulthard* (2023) 90 Cal.App.5th 743, 762.)

**DISPOSITION**

The order denying appellants' motion to compel arbitration is affirmed. Plaintiffs are entitled to their costs on appeal. (Cal. Rules of Court, rules 8.278(a)(1), (2).)

BURNS, J.

WE CONCUR:


JACKSON, P.J.
SIMONS, J.

11